George F. RUDDIES, Plaintiff,

v.

AUBURN SPARK PLUG CO., Inc. and Drake America Corporation, Defendants.

No. 60 Civ. 4376.

United States District Court
S. D. New York.

Nov. 9, 1966.

---

**650**

Harry Price, New York City, for plaintiff.

Hancock, Dorr, Ryan & Shove, Syracuse, N. Y., for defendant Auburn.

Fellner & Rovins, New York City, for defendant Drake.

OPINION

TENNEY, District Judge.

On November 9, 1960, plaintiff commenced an action for patent infringement against defendants Auburn Spark Plug Co., Inc. (hereinafter referred to as "Auburn") and Drake America Corporation (hereinafter referred to as "Drake") by causing a deputy United States marshal to deliver two copies of the summons and complaint to 640 Fifth Avenue, New York, New York. The marshal's return of service indicated that said papers were delivered to "R. C. Bruckenthal, Manager". The complaint specifically named both Auburn and Drake as defendants and alleged upon information and belief that both defendants are New York corporations and "are located at and doing business at 640 Fifth Avenue, city, county and State of New York, in the Southern District of New York."

Since neither defendant answered the complaint or made any motion in the action, a judge of this court on October 4, 1962 ordered that a default judgment be entered against Auburn and Drake and that an inquest be taken to determine the amount of damages due plaintiff.

Since the entry of the default judgment against Auburn and Drake, various motions have been presented to the Court by attorneys for plaintiff and for both defendants. The motions addressed to this Court for determination are as follows:

A. A motion by Auburn to have the entry of default and the default judgment entered against it vacated (filed January 20, 1965).[1]

1. The various parties and their attorneys have submitted a number of letters which conclusively show that Auburn did receive actual notice that a suit for patent infringement had been commenced against it by plaintiff on November 9, 1960. Although Auburn was aware of this fact before the default judgment was en-

B. A motion by plaintiff for summary judgment (filed February 18, 1965). This motion was subsequently withdrawn.

C. A motion by Auburn to stay all proceedings by plaintiff pending a determination of Auburn's motion to vacate the default judgment entered against it (filed March 31, 1965).

D. A motion by plaintiff to compel the defendants to comply with Rules 26–37 of the Federal Rules of Civil Procedure relating to discovery (filed November 3, 1965).

E. A motion by Drake to have the default judgment entered against it vacated (filed March 8, 1966).

F. A motion by Drake objecting to plaintiff's request for admissions (filed March 24, 1966).

G. A motion by Auburn objecting to plaintiff's request for admissions (filed March 28, 1966).

The Court now turns to a consideration of the various motions.

At the outset, it is crucial to determine the statutory scheme in which a Federal district court operates in an action for patent infringement. Such an examination is necessary because of the opinion of Judge Campbell in B. Heller & Co. v. First Spice Mfg. Corp., 172 F.Supp. 46 (N.D.Ill.1959). That case involved a suit for patent infringement brought against two foreign corporations in the Northern District of Illinois. When the defendants appeared specially and moved to quash the return of service and dismiss the action for improper venue, the Court, after a consideration of 28 U.S.C. § 1400(b) (1964) [2] and 28 U.S.C. § 1694 (1964),[3] concluded that both statutes were jurisdictional. Hence, Judge Campbell concluded that "a case brought erroneously under Sec. 1400(b) cannot be transferred but must be dismissed for lack of jurisdiction." 172 F.Supp. at 51.

Although one court, in the Northern District of Illinois, has followed Judge Campbell's holding that § 1400(b) is a jurisdictional as well as a venue statute, Kearney & Trecker Corp. v. Cincinnati Milling Mach. Co., 254 F.Supp. 130 (N.D. Ill.1966), there is authority which states that the decision is incorrect. See Annot., 5 L.Ed.2d 1056, 1061 (1961). After careful consideration of the history and purposes behind 28 U.S.C. § 1400(b), I have concluded that said statute relates solely to venue.

I have reached this conclusion for the following reasons:

28 U.S.C. § 1338(a) provides, in pertinent part, that "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents * * *." This statute is a clear pronouncement that every district court has jurisdiction over the subject matter of patent infringement. Motoshaver, Inc. v. Schick Dry Shaver, Inc., 100 F.2d 236 (9th Cir. 1938).

 But before a district court can proceed to adjudicate a patent infringement suit, more than jurisdiction over the subject matter is required—jurisdiction over the person of the defendant is also necessary. Gibbs v. Emerson Elec. Mfg. Co., 29 F.Supp. 810 (W.D.Mo.1939). Valid service of process or a voluntary appearance is the means by which a court acquires jurisdiction over the person of a defendant. See Kadet-Kruger & Co. v.

tered against it on October 4, 1962, the instant motion to vacate the default judgment marks Auburn's first appearance in the suit.

2. 28 U.S.C. § 1400(b) provides:
 Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

3. 28 U.S.C. § 1694 provides:
 In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business.

Celanese Corp. of America, 216 F.Supp. 249 (N.D.Ill.1963); North Allegheny Joint School Sys. v. Secretary of Health, Educ. and Welfare, 196 F.Supp. 144 (W.D.Pa.1961). If jurisdiction over the person of the defendant is never acquired by the Court, any judgment subsequently rendered by the Court is void and of no effect. French Renovating Co. v. Ray Renovating Co., 170 F.2d 945 (6th Cir. 1948); Jones v. Watts, 142 F.2d 575, 163 A.L.R. 240 (5th Cir.), cert. denied, 323 U.S. 787, 65 S.Ct. 310, 89 L.Ed. 628 (1944).

On the other hand, proper venue is not a prerequisite to the rendition of a valid judgment. Objection to venue is a personal privilege which is lost to a defendant if not timely raised. See 28 U.S.C. § 1406(b) (1964); Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

With these principles firmly established, the Court now proceeds to an examination of whether 28 U.S.C. § 1400 (b) and 28 U.S.C. § 1694 relate to jurisdiction over the person and/or to venue. Any consideration of these statutes must start with an examination of the predecessor statute, 28 U.S.C. § 109. This section provided:

"In suits brought for the infringement of letters patent the district courts of the United States *shall have jurisdiction,* in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpoena upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought." (Emphasis added.)

Since the statute itself was couched in jurisdictional terms, it was not unreasonable for many courts to consider 28 U.S.C. § 109 as both a jurisdictional and a venue statute. Blaw-Knox Co. v. Lederle, 151 F.2d 973 (6th Cir. 1945); Bulldog Elec. Prods. Co. v. Cole Elec. Prods. Co., 134 F.2d 545 (2d Cir. 1943); Shelton v. Schwartz, 131 F.2d 805 (7th Cir. 1942); Phillips v. Baker, 121 F.2d 752 (9th Cir.), cert. denied, 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551 (1941); Endrezze v. Dorr Co., 97 F.2d 46 (9th Cir. 1938). But see General Elec. Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932); Automatic Toy Corp. v. Buddy "L" Mfg. Co., 19 F.Supp. 668 (S.D.N.Y.1937). Indeed, the United States Supreme Court in Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), the leading case interpreting Section 109, spoke of the statute in jurisdictional terms.

Hence, this Court fully agrees with Judge Campbell's conclusion in B. Heller & Co. v. First Spice Mfg. Corp., supra, that Section 109 was a jurisdictional statute. However, it is my considered opinion that when the Judicial Code was revised in 1948, and Section 109 was replaced by Sections 1400(b) and 1694, it was not intended that both these sections be considered jurisdictional.

In the first place, 28 U.S.C. § 1400(b) is contained in Chapter 87 of the Judicial Code. This chapter is entitled, "District Courts: Venue" and Section 1400(b) is merely one of numerous venue statutes falling under this chapter. Section 1694, on the other hand, appears in Chapter 113 of the Judicial Code which is labeled "Process".

An even clearer indication of legislative intent are the Reviser's Notes to Sections 1400(b) and 1694. The notes to both sections state that they are based upon the old Section 109 of Title 28. However, the Reviser's Notes to Section 1400(b) unequivocally state that: "The provisions of said section 109 of Title 28, relating to *process* are incorporated in section *1694* of this title." (Emphasis added.) In contrast, the notes to Section 1694 state: *"Venue* provisions of said section 109 * * *' appear in sec-

tion *1400* of this title." (Emphasis added.)

From this brief look at legislative history, it is apparent that when the Judicial Code was revised in 1948 the jurisdictional provisions of the old Section 109 were placed in Section 1694 and the provisions relating to venue were placed in Section 1400(b). This view is substantiated by language of the United States Supreme Court in the leading case of Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957). In that case, the Court's holding that 28 U.S.C. § 1400(b) was the exclusive statute relating to venue in patent infringement actions brought in Federal district courts was influenced in large part by a careful review of the legislative history behind Section 109 and Section 1400(b). The Court concluded that:

> As shown by their notes on § 1400 (b), the Revisers placed the venue provisions * * * of old § 48 [28 U.S.C. § 109] with word changes and omissions later noted, in § 1400(b), and placed the remainder, or process provisions, with certain word changes, in § 1694 of the 1948 Code. 353 U.S. at 226, 77 S.Ct. at 790.

In addition to logic and legislative history, many courts have spoken of Section 1400(b) as a venue statute. Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); Fourco Glass Co. v. Transmirra Prods. Corp., supra; Knapp-Monarch Co. v. Casco Prods. Corp., 342 F.2d 622 (7th Cir.), cert. denied, 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73 (1965); Metalock Repair Serv., Inc. v. Harman, 288 F.2d 308 (6th Cir. 1961); Dow Chem. Co. v. Metlon Corp., 281 F.2d 292 (4th Cir. 1960); Coleco Industries, Inc. v. Kransco Mfg. Inc., 247 F.Supp. 571 (S.D.N.Y.1965); Kierulff Associates v. Luria Bros. & Co., 240 F.Supp. 640 (S.D.N.Y.1965); Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co., 204 F.Supp. 4 (S.D.N.Y.1962); Harris-Intertype Corp. v. Photon, Inc., 185 F.Supp. 525 (S.D.N.Y.1960); Mastantuono v. Jacobsen Mfg. Co., 184 F.

Supp. 178 (S.D.N.Y.1960); Kamkap, Inc. v. Worldbest Indus., Inc., 140 F. Supp. 854 (S.D.N.Y.1956); Federal Elec. Prods. Co. v. Frank Adam Elec. Co., 100 F.Supp. 8 (S.D.N.Y.1951).

■ To summarize, the present statutory scheme concerning patent infringement actions would appear to be as follows: 28 U.S.C. § 1338(a) confers subject matter jurisdiction; 28 U.S.C. § 1694 provides a method for obtaining personal jurisdiction over a defendant in a patent infringement suit; 28 U.S.C. § 1400(b) relates to venue of patent infringement actions. With these principles in mind, the Court now turns to the question of whether jurisdiction over the person of Auburn was ever acquired by valid service of process on Auburn or by Auburn's appearance in the action. The question of proper venue and whether there was a waiver of venue by Auburn need only be reached if this Court finds that jurisdiction was in fact acquired over Auburn's person.

28 U.S.C. § 1694 provides a special method of service in patent infringement cases. For service to be proper under this section, three basic requirements must be met: 1) the defendant must not be a resident of the district where the action is commenced; 2) the defendant must have a regular and established place of business within the district; and 3) if the first two requirements are met, service may be made upon the defendant by serving his agent conducting such business.

A serious question has arisen as to whether Auburn is a resident of the Southern District of New York within the meaning of Section 1694. To hold that Auburn does reside in the district would mean that the method of service authorized by 28 U.S.C. § 1694 was unavailable. In such a situation the Court must determine whether jurisdiction was in fact acquired over Auburn by any other means as discussed infra. On the other hand, if Auburn does not reside in the Southern District within the meaning of the statute, service under Section 1694 may be proper—provided that the

other requirements of said section have been met.

Assuming that Auburn does not reside in the Southern District, the Court now comes to the question of whether Auburn has a regular and established place of business in this district within the meaning of Section 1694. Since the phrase "regular and established place of business" appears both in 28 U.S.C. § 1400 (b) and 28 U.S.C. § 1694 and since both these sections are derived from the former 28 U.S.C. § 109, cases decided under all three of these sections may be appropriately resorted to for guidance.

■ It is, of course, plaintiff's burden to show that the defendant has a regular and established place of business within this district. Coleco Indus., Inc. v. Kransco Mfg. Inc., supra; Gwynne v. Michael Flynn Mfg. Co., 227 F.Supp. 357 (S.D.N.Y.1964). Merely doing business in this district is not enough. Something more is required. "It must appear that a defendant is regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." Mastantuono v. Jacobsen Mfg. Co., supra, 184 F.Supp. at 180; accord, Coleco Indus. Inc. v. Kransco Mfg., Inc., supra; Brevel Prods. Corp. v. H & B Am. Corp., 202 F.Supp. 824 (S.D.N.Y.1962).

■ Although each case must stand or fall on its own particular facts, an examination of recent cases in this district will reveal certain factors which courts have consistently looked to in order to determine whether a corporation has a regular and established place of business within the district because of the presence and activities of a representative in the district. Among the factors to be considered are the following: whether a corporate relationship exists between the defendant corporation and its representative (e. g., same officers, interlocking directorates, cross-stock ownership); whether the name of the defendant corporation appears on the office door of the representative, in a telephone listing, in a public directory or on the representative's stationery; whether the representative handles sales of other corporations; the amount of business handled by the representative for the defendant corporation; whether the defendant corporation pays the office expenses of the representative's office, including rent; whether the salaries of the representative are paid by the defendant corporation; to what extent the defendant corporation exercises control over the representative's activities; whether the defendant corporation holds out the representative as its agent. See, e. g., Brevel Prods. Corp. v. H & B Am. Corp., supra; Harris-Intertype Corp. v. Photon, Inc., supra; Mastantuono v. Jacobsen Mfg. Co., supra; Kamkap, Inc. v. Worldbest Indus., Inc., supra.

Turning to the instant matter, the basis of the relationship between Auburn and Drake is contained in an agreement between the parties, dated September 1, 1955. Among the salient features of the agreement are the following: 1) Drake is appointed Auburn's exclusive export representative for products manufactured and sold by Auburn; 2) Drake is assigned the exclusive right to develop the distribution and sales, appoint distributors and sales representatives, solicit and obtain orders for Auburn's products in the overseas market; 3) Drake will maintain its own offices in New York City, pay all expenses, cables, postage and commissions; 4) Auburn will give Drake promotional materials and advertising assistance; 5) Auburn will invoice its goods to Drake and Drake will pay Auburn for the goods so invoiced; 6) Auburn will not sell or ship into Drake's territory without Drake's permission; 7) Auburn will ship orders F.O.B. New York; and 8) both parties agree to utilize their mutual best efforts.

In addition to this agreement, the June 24, 1965 affidavits of Harvey Klein, a vice-president of Drake, and R. C. Bruckenthal, the manager of Drake, state in

substance that neither one is employed by Auburn, that Drake handles only Auburn's export sales, that Auburn is only one of many corporations represented by Drake and that no corporate or affiliate relationship exists between Auburn and Drake.

The affidavit of C. J. Nolin, president of Auburn (dated December 23, 1964) and his testimony at a hearing before this Court on November 24, 1965, substantiate Klein's and Bruckenthal's statements and additionally disclose that Auburn owned no Drake stock, that Auburn does not pay any salaries to Drake employees' that no Auburn employees worked at Drake's office, that Auburn did not rent space in Drake's office, that there is no interlocking directorate and that Drake solicits orders at Auburn's set prices and ships them to Auburn to be filled. Drake receives invoices for the spark plugs and then pays Auburn. Auburn's brief does admit that its name is listed along with the name and telephone number of Drake in the Manhattan telephone directory. In addition, Drake's name and address are listed in some of Auburn's catalogues.

■ From the foregoing facts, it is apparent that Auburn has no regular and established place of business in this district. Auburn's connections in this district are tenuous. See Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co., supra; Mastantuono v. Jacobsen Mfg. Co., supra. Telephone listings alone are not sufficient to subject a defendant to a patent infringement action in this district. Mastantuono v. Jacobsen Mfg. Co., supra; Kamkap, Inc. v. Worldbest Indus., Inc., supra. The fact that a defendant hires a sales representative who, in turn, rents offices to sell the defendant's products, is likewise insufficient. Brevel Prods. Corp. v. H & B Am. Corp., supra; see Coleco Indus., Inc. v. Kransco Mfg., Inc., supra. Most courts have held that mere solicitation of sales does not meet the statutory requirement. W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915); Knapp-Monarch Co. v. Casco

Prods. Corp., supra; General Radio Co. v. Superior Elec. Co., 293 F.2d 949 (1st Cir. 1961); Elevator Supplies Co. v. Wagner Mfg. Co., 54 F.2d 937 (S.D. N.Y.), aff'd per curiam, 54 F.2d 939 (2d Cir. 1931). Drake's listing in Auburn's catalogue is simply an incident of sales solicitation. Brevel Prods. Corp. v. H & B Am. Corp., supra. It is true that some courts in this district have held mere solicitation sufficient, but this must be done at a regular and established place. Stiegele v. Jacques Kreisler Mfg. Corp., 213 F.Supp. 494 (S.D.N.Y.1962); Gwynne v. Michael Flynn Mfg. Co., supra.

■ But here, because of the absence of its own office, employees and products in the district, Auburn clearly lacks a regular and established place of business within the Southern District. It would thwart Congressional purpose if separate corporations were treated as one "for the sole purpose of bringing into a district, to defend a patent infringement suit, a corporation whose records, operations, offices and employees are located elsewhere." Technograph Printed Circuits, Ltd. v. Epsco, Inc., 224 F.Supp. 260, 265 (E.D.Pa.1963). Hence, I conclude that Auburn does not have a regular and established place of business in this district by reason of the activities of Drake. Accordingly, proper service was never made upon Auburn in this district under the provisions of 28 U.S.C. § 1694.

■ But service in accordance with the provisions of 28 U.S.C. § 1694 is not the only means whereby jurisdiction may be acquired over an infringing defendant. The service of process provisions of Rule 4 of the Federal Rules of Civil Procedure are also available to a plaintiff in a patent infringement suit. Shelton v. Schwartz, supra; McGah v. V-M Corp., 166 F.Supp. 662 (N.D.Ill. 1958); Latini v. R. M. Dubin Corp., 90 F.Supp. 212 (N.D.Ill.1950). The only possible methods of service available to plaintiff under Rule 4 are set forth in Rules 4(d) (3) and 4(d) (7).

■ At the time service was purportedly made on Auburn, Rule 4(d) (3) provided that personal service shall be made:

(3) Upon a domestic or foreign corporation * * * by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *.

It is clear that the service of the summons and complaint on R. C. Bruckenthal did not meet the requirements of Rule 4(d) (3) as far as Auburn was concerned. Bruckenthal was not an officer of Auburn. His affidavit states that he was the manager of Drake and was not employed by Auburn in any capacity. C. J. Nolin's affidavit confirms this. Neither can Bruckenthal be said to be a managing or general agent of Auburn. No agency relationship exists between Auburn and Drake. In no sense can it be said that Bruckenthal is in charge of Auburn's activities within this district. See Den Heijher v. Erie R.R., 171 F. Supp. 174 (S.D.N.Y.1954). At most, Drake is a sales representative of a corporation not present within the Southern District within the rationale of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Furthermore, the phrase "any other agent authorized by appointment" refers to an agent expressly or impliedly appointed by the corporation. 2 Moore, Federal Practice ¶ 4.22[1], at 1116 (2d ed. 1965). Here, the agreement between Auburn and Drake does not authorize the latter to receive process on Auburn's behalf. In addition, the affidavits of Nolin, Klein and Bruckenthal deny that Drake was ever expressly or impliedly authorized to receive service for Auburn.

Finally, Bruckenthal cannot be said to be an "agent authorized by law" to receive process on behalf of Auburn. This phrase includes both federal and state statutes which vest an existing agent of a corporation with authority to receive service of process. 2 Moore, Federal

Practice ¶ 4.22[1], at 1118 (2d ed. 1965). The only applicable federal statute is 28 U.S.C. § 1694 which has already been shown to be unavailable to plaintiff. Also, for reasons to be discussed below, no New York statute effectively authorized Bruckenthal to receive service on behalf of Auburn.

Turning to Rule 4(d) (7), the Court similarly finds that service on Auburn was ineffective within the meaning of this section. Rule 4(d) (7) provides that service

(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

There is no need to discuss service under a statute of the United States since the unavailability of 28 U.S.C. § 1694, the only relevant statute, has been fully explored by the Court. Hence, the Court turns its attention to the New York statute providing for service on a corporation.

■ It should be noted that although there may have been several methods available to plaintiff under New York law in an attempt to validly serve Auburn, the only method attempted was personal service on Bruckenthal in New York City. In 1960, the applicable New York statute providing for personal service of a summons, within the state, upon a domestic corporation, was the New York Civil Practice Act, § 228. This statute provided, in pertinent part:

Personal service of the summons upon a domestic corporation must be made by delivering a copy thereof, within the state, as follows:

8. In any other case, to the president or other head of the corporation, the vice-president of the cor-

poration, the secretary, or assistant secretary, or clerk to the corporation, the cashier, an assistant cashier, the treasurer or assistant treasurer or a director or managing agent.

An examination of the agreement between Auburn and Drake, the various affidavits that have been submitted and the testimony taken at the hearing on November 23, 1965, conclusively demonstrates that R. C. Bruckenthal falls within none of the categories of Civil Practice Act, § 228. Bruckenthal was neither an officer nor a director of Auburn. Neither has he been shown to be Auburn's managing agent. Since service was invalid under Civil Practice Act, § 228, it was also invalid under Rule 4(d)(7) of the Federal Rules of Civil Procedure.

Accordingly, since jurisdiction over the person of defendant Auburn was never acquired by service of the summons and complaint in accordance with the requirements of Rule 4(d) and, furthermore, since 28 U.S.C. § 1694 was not available as a proper method of service, the Court concludes that no jurisdiction was ever acquired over Auburn by reason of the marshal's service of November 9, 1960 on R. C. Bruckenthal.

Nor could it be seriously argued that when Auburn moved to set aside the default judgment entered against it, this constituted an appearance or voluntary submission to the jurisdiction of the Court in this action.

From the foregoing it is clear that since Auburn was never validly served and never appeared, this Court never acquired jurisdiction over the person of Auburn. See Kadet-Kruger & Co. v. Celanese Corp. of America, supra; North Allegheny Joint School Sys. v. Secretary of Health, Educ. and Welfare, supra. Any judgment rendered by a court lacking jurisdiction over a defendant is void. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877); French Renovating Co. v. Ray Renovating Co., supra; Jones v. Watts, supra.

Additionally, the fact that a defendant such as Auburn may have had full knowledge of the proceedings against it (as shown by the interchange of correspondence between the various parties and their attorneys subsequent to the marshal's service [see Note 1] but before the entry of the default judgment) does not change the result. Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928); Kadet-Kruger & Co. v. Celanese Corp. of America, supra. If service was invalid as to Auburn it was "entitled to ignore the whole proceeding and subsequently attack any default judgment which might result from it." Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 873 (3d Cir.), cert. denied, Orange Theatre Corp. v. Brandt, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944); accord DiVecchio v. Gimbel Bros., 40 F.R.D. 311 (W.D.Pa.1966).

 Since the Court has determined that valid jurisdiction was never acquired over Auburn and hence the default judgment entered against it is void, there is no need for the Court to reach the issue as to whether venue was proper in this district and whether Auburn's actions constituted a waiver of the special venue requirements of 28 U.S.C. § 1400(b).

 Rule 55 of the Federal Rules of Civil Procedure provides that if a default judgment has been entered, the Court may set it aside in accordance with the provisions of Rule 60(b). Rule 60(b)(4) provides that:

> On motion and upon such terms as are just, the court may relieve a party or his legal representatives from a final judgment, order, or proceeding for the following reasons:

> \* \* \* \* \* \*

> (4) the judgment is void.

Since the default judgment entered against Auburn is void, relief under Rule 60(b)(4) is appropriate. See Austin v. Smith, 114 U.S.App.D.C. 97, 312 F.2d 337 (1962); Hicklin v. Edwards, 226 F. 2d 410 (8th Cir. 1955); Bruce v. Paxton, 31 F.R.D. 197 (E.D.Ark.1962).

Plaintiff has argued that Auburn's delay in making the instant motion after it had actual knowledge of the service on Bruckenthal is fatal. But Rule 60(b)(4) provides no real time limit. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a "reasonable time", which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced in this type of situation. 3 Barron & Holtzoff, Federal Practice and Procedure § 1327, at 412 (Wright ed. 1958). A void judgment can acquire no validity because of laches on the part of one who applies for relief from it. Austin v. Smith, supra; Marquette Corp. v. Priester, 234 F.Supp. 799 (E.D.S.C. 1964).

Hence the default judgment entered against Auburn is hereby vacated.

The factors which have compelled this Court to set aside the default judgment against Auburn are not present in Drake's motion for similar relief. It is clear that valid personal service was made on Drake in accordance with the requirements of Rule 4(d). A summons and complaint naming Drake as a defendant was served on R. C. Bruckenthal, an officer of Drake, on November 9, 1960. No claim can be made that this service was invalid. Nevertheless, Drake neither answered the complaint nor otherwise took any action in this suit until March 8, 1966, when it made the instant motion to have the default judgment entered against it vacated.

Furthermore, the default judgment entered by this Court on October 4, 1962 specifically ordered that judgment be entered against both Auburn and Drake. No claim has been made by Drake that it never received notice of the entry of this default judgment. Nevertheless, Drake waited almost four years before attacking the judgment.

Based on these facts, the Court finds no valid reason to grant Drake the requested relief. Since the judgment entered against Drake is not void, Rule 60(b)(4) is unavailable. Neither may any of the other grounds set forth in Rule 60(b) be utilized since motions under the other subsections must be made either within one year from the entry of the judgment or within a reasonable time. In no sense can Drake's delay of almost three and one-half years from the entry of the default judgment be considered a reasonable time.

In addition, for relief under Rule 60(b)(6), the only possible subsection available to Drake, extraordinary circumstances must be shown. Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L. Ed. 207 (1950). It is clear that the required showing has not been made. Rule 60(b)(6) was not designed to supersede the normal and ordinary channels of relief. "Nor was it intended to invest the court with an omnipotence whose boundary is defined only by the court's conscience." Loucke v. United States, 21 F.R.D. 305, 308 (S.D.N.Y.1957).

Drake bases its claim to relief on general equitable grounds and on the further ground that if Auburn's motion is granted, the judgment against Drake cannot stand because a necessary party to the action will have been eliminated. The Court places little credence in the March 2, 1966 affidavit of Harvey Klein, vice-president of Drake, when he states that Drake ignored the papers delivered to it since it was under the impression that Auburn was the principal defendant and Drake was added merely as a nominal party.

It is beyond dispute that the alleged patent infringement would give rise to two actions: the manufacture and sale of the allegedly infringing spark plug by Auburn would constitute one actionable tort, while the sale of the same plug by Drake would constitute a second actionable tort. See 35 U.S.C. § 271 (1964); Gwynne v. Michael Flynn Mfg. Co., supra; Federal Elec. Prods. Co. v. Frank Adam Elec. Co., supra; Yale & Towne Mfg. Co. v. Manning, Maxwell & Moore, Inc., 91 F.Supp. 106 (S.D.N.Y. 1950).

Hence, Drake's claim that Auburn is a necessary party is without merit. "In

a suit for infringement, the plaintiff may choose the alleged infringers he wishes to join as defendants and is not required to join all such persons." 2 Barron & Holtzoff, Federal Practice and Procedure, § 513.9 at 134 (Wright ed. 1961). See Conmar Prods. Corp. v. Tibony, 63 F.Supp. 372 (E.D.N.Y.1945).

 Therefore, Drake's motion to vacate the default judgment is denied.

In view of the foregoing, the Court need not reach a decision on Motion C (Auburn's motion to stay all proceedings) and Motion D (plaintiff's motion to compel compliance with certain discovery rules) since the issues presented in the within motions are now moot. Furthermore, since this opinion has determined that there is no action presently pending against Auburn, plaintiff's request for admissions by Auburn (Motion F) is improper. Finally, plaintiff is given leave to reframe his requests for admissions by Drake (Motion G) in conformity with this opinion.

The Calendar Clerk is directed to put the case on the non-jury Calendar and set it down for an inquest against Drake.

So ordered.