Joseph **MERRILL**, Plaintiff,

v.

**ZAPATA GULF MARINE CORPORATION,**
Defendant.

**Civ. No. 87–0115–P.**

United States District Court,
D. Maine.

July 31, 1987.

Michael X. Savasuk, Portland, Me., for plaintiff.

John D. McKay, Portland, Me., Clyde H. Jacob, III, New Orleans, La., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

Defendant Zapata Gulf Marine Corporation is before the Court seeking to dismiss Plaintiff Joseph Merrill's claim against it for lack of personal jurisdiction. Fed.R. Civ.P. 12(b)(2). Plaintiff, who is a seaman, claims that Defendant wrongfully breached its employment contract with him by terminating him without cause. Subject matter jurisdiction is based on the admiralty jurisdiction of the federal courts, 28 U.S.C. § 1333.

Defendant is a Texas corporation with its principal place of business in Houston, Texas; it maintains other offices in California, Florida, Hawaii, Louisiana, and Texas. Defendant has no offices in the State of Maine, owns no property in this state, conducts no business here, has sent no officers or representatives into the state, and owns no vessel that has called at a port in Maine.

Plaintiff was a resident of the State of Maine when hired by Defendant and has remained a resident of this state throughout the course of his employment. He

became an employee of Defendant after contacting Defendant's predecessor[1] in 1982 regarding employment opportunities. He then traveled to Louisiana where he negotiated the terms and conditions of his employment. Defendant subsequently employed Plaintiff for a number of nine-month terms. A separate written contract governed each such term of employment. Defendant mailed each contract to Plaintiff's residence in Maine where he would sign it and mail it back. Although Plaintiff performed his employment duties outside the territorial boundaries of the United States, his term of employment began on the day he departed from Portland, Maine.

Defendant.argues that these facts fail to establish the "minimum contacts" requirement of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Plaintiff counters, however, that the minimum contacts analysis is inapplicable to cases arising under the Court's admiralty jurisdiction.

Plaintiff cites *Trans-Asiatic Oil Ltd. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir.1984), for the proposition that the minimum contacts requirement of *International Shoe* does not apply to a federal court sitting in admiralty. *Id.* at 959. Although the First Circuit did state that proposition as its holding, the Court finds that *Trans-Asiatic* must be limited by its facts. In *Trans-Asiatic*, the plaintiff attached the defendant's property located in the forum state by invoking the attachment and process provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. *Id.* at 957–58. It is the attachment and special process provisions of Rule B that support the Circuit's abrogation of the minimum contacts analysis.

*Trans-Asiatic* draws its reasoning from a recent line of cases in which various federal courts have found the minimum contacts requirement to be inapplicable in cases in which the court's subject matter jurisdiction is not based on diversity of citizenship. *See generally* 4 C. Wright &

A. Miller, *Federal Practice and Procedure* § 1067.1, at 304–15 (1987). In general, however, this reasoning applies only if Congress has enacted a statute authorizing nationwide service of process. Otherwise, courts have continued to apply the minimum contacts requirement in cases in which service is accomplished under a state long-arm statute, as required by Rule 4 of the Federal Rules of Civil Procedure. *See, e.g., Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415 (5th Cir.1986), *cert. granted,* — U.S. ——, 107 S.Ct. 946, 93 L.Ed.2d 995 (1987) (action brought under Commodity Exchange Act); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir.1984) (explaining the differences between the requirements for personal jurisdiction and venue).

 The rationale of *Point Landing* and the cases cited therein is based on the limitations imposed by Rule 4. It is as follows. Rule 4 governs the extent to which a federal court may obtain personal jurisdiction over a given defendant by prescribing the method of serving process. If service of process under Rule 4 is governed by a state's long-arm statute, a federal court's power over the person of the defendant is limited by the reach of that long-arm statute, a determination made by applying the minimum contacts analysis. Thus, although Congress may expand the personal jurisdiction of the federal courts, limited by the fifth amendment and not the minimum contacts requirement developed under the fourteenth amendment, a federal court may not ignore the limitations on its power imposed by Congress through Rule 4.

 Thus, in nondiversity cases, the Court's jurisdiction over the person of the defendant is limited by the scope of the process available to the Court. If *Trans-Asiatic* is read in light of this rationale, then it becomes apparent that the case rests squarely on the availability of process under Supplemental Rule B. In the present case, however, service of process is

---

1. For purposes of this motion, Defendant does not contest that it merged with the company that originally employed Plaintiff. The Court,

therefore, attributes to Defendant the acts of this predecessor company.

governed by Rule 4 alone. *See W.G. Bush & Co. v. Sioux City & New Orleans Barge Lines, Inc.*, 474 F.Supp. 537, 540 (M.D. Tenn.1977) (discussing personal jurisdiction in admiralty cases). Under Rule 4, service is made under the Maine Long Arm Statute, 14 M.R.S.A. § 704–A (1980). Thus, the Court has personal jurisdiction over Defendant only if Defendant was amenable to service under the Maine statute. To make this determination, the Court must consider whether Defendant has had the requisite minimum contacts with the state.

■ Where the relationship between the parties and the forum state is based on an underlying contractual relationship, the Court must undertake the "contract-plus" analysis of *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985). This analysis requires the Court to consider the following factors: the prior negotiations between the parties; the contemplated future consequences of the parties' contractual relationship; the terms of the contract; and the parties' actual course of dealing.

For purposes of this motion, Defendant has conceded that a contract exists between the parties. Nevertheless, Defendant stresses that there are no "plus" factors within the scope of the *Burger King* analysis. The Court disagrees.

The basis of the Court's disagreement with Defendant's position lies in the nature of the relationship between the parties and the foreseeable consequences that arise from such a relationship. The contract between the parties established an employment relationship. The State of Maine considers its interest in its residents' employment relationships to be so substantial that it subjects all employers of its residents to

the various rights and duties created under the state's workers' compensation act regardless of where the employment duties are performed. *Dissell v. Trans World Airlines*, 511 A.2d 441 (Me.), *cert. denied*, — U.S. ——, 107 S.Ct. 433, 93 L.Ed.2d 382 (1986).[2]

Under the express terms of this employment contract, Plaintiff was an employee of Defendant while Plaintiff was within the territorial borders of the state.[3] Had Plaintiff committed a tortious act during one of these periods, Defendant could certainly have been haled into court within the state under a *respondeat superior* theory of liability.

In addition, although the initial contact between the parties was instigated by Plaintiff and the original negotiations were conducted outside of this state, the relationship between the parties consisted of a series of contracts that spanned four years. In each instance, Defendant renewed its relationship with Plaintiff by contacting him within this state and offering him a new contract.

The Court finds that this course of dealing, when combined with the nature of the contractual relationship and the express terms of the contract, provides a substantial connection between Defendant and the State of Maine. Having availed itself of the advantages of employing a skilled workforce regardless of the residence of its individual members, Defendant may not avoid the natural consequences resulting therefrom. *See Ganis Corp. v. Jackson*, 822 F.2d 194, 197 (1st Cir.1987). Consequently, assertion of personal jurisdiction over this Defendant comports with the traditional notions of fair play that underlie the minimum contacts analysis.

**2.** The Court expresses no opinion as to the foreseeability of a set of facts that would expose this Defendant to the holding in *Dissell* since the remedies provided by federal maritime law for work-related injuries suffered by seamen preempt similar state law. *See, e.g.*, 46 U.S.C. § 688 (the Jones Act); *cf. Lindgren v. United States*, 281 U.S. 38, 47–48, 50 S.Ct. 207, 211–12, 74 L.Ed. 686 (1930) (under Jones Act, seaman injured in the course of his employment may elect between remedy provided by doctrine of unseaworthiness and remedy provided by the

Act, but the Act provides the exclusive remedy for seaman's death; the Act "supersedes the operation of all state statutes dealing with that subject").

**3.** Paragraph Four of the contract states: "This Agreement shall commence on the date of departure of EMPLOYEE from *Portland, Maine*, and shall continue subject to the terms of this Contract for a term of *(9) Nine* months, hereinafter called "TERM."

For the reasons articulated above, the Court hereby *DENIES* Defendant's Motion to Dismiss.

So ORDERED.