**TALUS CORPORATION, Plaintiff,**

v.

**Donald V. BROWNE, Defendant.**

**Civ. No. 91–0167–P.**

United States District Court,
D. Maine.

Oct. 3, 1991.

James G. Goggin, Verrill & Dana, Portland, Me., for plaintiff Talus Corp.

John H. Rich III, Perkins, Thompson, Hinckley & Keddy, Portland, Me., Gregory V. Novak, Coffee–Novak, Lubbock, Tex., for defendant Donald V. Browne.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

In this patent invalidity and noninfringement action, Defendant, owner of a patent allegedly infringed upon by Plaintiff, has moved to dismiss Plaintiff's Complaint for lack of *in personam* jurisdiction under

Federal Rule of Civil Procedure 12(b)(2) and improper venue under Federal Rule of Civil Procedure 12(b)(3). Alternatively, Defendant seeks transfer of venue pursuant to 28 U.S.C. section 1404 if his motion to dismiss is denied by this Court. Jurisdiction of the Court arises under the Federal Declaratory Judgements Act, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1332; federal patent law, 28 U.S.C. § 1338; and pendent jurisdiction, 35 U.S.C. § 271. For the reasons that follow, the Court will grant the motion to dismiss on the basis of lack of *in personam* jurisdiction.

## I. *In Personam Jurisdiction*

■ When a defendant makes a motion under Rule 12(b)(2), the plaintiff has the burden of proving that *in personam* jurisdiction exists in the court. *Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law*, 787 F.2d 7, 9–10 (1st Cir.1986). According to the Court of Appeals for the First Circuit, "if the plaintiff makes a prima facie showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met." *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 979 (1st Cir.1986) (citations omitted).

■ The Court's exercise of *in personam* jurisdiction over a defendant in a nondiversity case "is limited by the scope of the process available to the Court." *Merrill v. Zapata Gulf Marine Corp.*, 667 F.Supp. 37, 39 (D.Me.1987). As this Court has noted:

> [B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.... [U]nder Rule 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction.

*Sparkowich v. American Steamship Owner's Mutual Protection and Indemnity Association*, 687 F.Supp. 695, 698 (D.Me. 1988) (quoting in part *Omni Capitol International v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)).

This Court also noted that "[t]he only situation in which the assertion of nondiversity personal jurisdiction is not governed by the local long-arm statute occurs when Congress has specifically authorized statutory nationwide service of process." *Id.* Service of process for patent infringement acts is covered under 28 U.S.C. section 1694, which states that:

> In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business.

Courts have interpreted the statute's standard of a "regular and established place of business." *See, e.g., Shelton v. Schwartz*, 131 F.2d 805, 808–09 (7th Cir.1942) (office in district through which defendant maintained salesmen and representatives, who solicited orders and carried on a continuous, substantial business was a "regular and established place of business"); *Ruddies v. Auburn Spark Plug Co.*, 261 F.Supp. 648, 654 (S.D.N.Y.1966) ("It must appear that a defendant is regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control.") (quoting *Mastantuono v. Jacobsen Manufacturing Co.*, 184 F.Supp. 178, 180 (S.D.N.Y.1960)).

Title 28 U.S.C. section 1694, however, is not an exclusive provision for service of process in patent infringement cases. "The service of process provisions of Rule 4 of the Federal Rules of Civil Procedure are also available to a plaintiff in a patent infringement suit." *Ruddies*, 261 F.Supp. at 655. *See also Werner Machinery Co. v. National Cooperatives, Inc.*, 289 F.Supp.

962 (E.D.Wis.1968) ("28 U.S.C. § 1694 is not exclusive, and the plaintiff may also effect service pursuant to Rule 4"). Under Rule 4, "the Court has personal jurisdiction over Defendant only if Defendant [is] amenable to service under the Maine [long-arm] statute." *Merrill*, 667 F.Supp. at 40.

■ The Court's exercise of *in personam* jurisdiction under Rule 4 must be consistent with Maine's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id. See also Electronic Media International v. Pioneer Communications of America, Inc.*, 586 A.2d 1256, 1258 (Me.1991). Under the Fourteenth Amendment, the Court must ask "whether the defendant purposefully established 'minimum contacts' in the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), and whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ In order for this Court to exercise specific jurisdiction over Defendant, "the claim or cause of action must arise out of or be related to a defendant's forum contacts and the defendant must have purposefully directed his activities at residents in the forum state." *Smirz v. Fred C. Gloeckner & Co.*, 732 F.Supp. 1205, 1207 (D.Me.1990) (citing *Burger King*, 471 U.S. at 472–75, 105 S.Ct. at 2181–84). The Maine long-arm statute provides for the exercise of specific jurisdiction; that is, it states that "[o]nly causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section." Me.Rev.Stat.Ann. tit. 14, § 704–A(2), (4) (1980). Alternatively, this Court may subject Defendant to general *in personam* jurisdiction "if the controversy is unrelated to a defendant's contacts with the forum ... [and] defendant's contacts with the forum are continuous and substantial." *Sandstrom v. Chemlawn Corp.*, 727

F.Supp. 676, 682 (D.Me.1989), *aff'd*, 904 F.2d 83 (1st Cir.1990) (citations omitted).

Plaintiff claims that Maine's long-arm statute subjects Defendant to the *in personam* jurisdiction of this Court. Plaintiff's Memorandum in opposition to Defendant's Motion to Dismiss and/or Transfer (hereinafter "Plaintiff's Memorandum") at 3–5. Specifically, Plaintiff claims that Defendant's conduct in sending a letter to Plaintiff in Maine and to Plaintiff's counsel in Massachusetts falls within the statute's provision that subjects any person "causing a tortious act to be done, or causing the consequences of a tortious act to occur ... (within Maine)" to the jurisdiction of Maine's courts. Me.Rev.Stat.Ann. tit. 14, § 704–A(2)(B) (1980). Plaintiff argues that "[w]hen a patent owner deliberately sends letters threatening infringement into a forum which adversely affect a manufacturer's business there, the allegedly tortious acts in the sending of such letters are acts committed in that forum, sufficient to subject the patent owner to personal jurisdiction in the forum." Plaintiff's Memorandum at 4.

According to the record, Defendant sent correspondence to Plaintiff in Maine on or about December 13, 1990, informing Plaintiff of Defendant's United States Patent Number 4,757,928 (hereinafter " '928"). *See* Plaintiff's Memorandum at 2; Defendant's Memorandum of Law in Support of Dismissal Pursuant to Rules 12(b)(2) and 12(b)(3) or in the Alternate, Transfer of Venue Pursuant to 28 U.S.C. § 1404 (hereinafter "Defendant's Memorandum I"), Exhibit "B." Subsequently, a stream of correspondence occurred between Plaintiff and Defendant's counsel, dated January 9, 17 and 31, 1991; February 5, 1991; and, finally, a letter dated April 29, 1991 by Defendant directed to Plaintiff's attorneys in Massachusetts, again notifying Plaintiff of its infringing the '928 patent, and demanding that Plaintiff and its customers immediately cease and desist in their sales of TRASH STASH litter bags. *See* Defendant's Memorandum II, Exhibit "C." Plaintiff then filed its Complaint for declaratory relief on or about May 15, 1991.

Defendant argues that its conduct does not fall within Maine's long-arm statute because the sending of notice letters does not constitute a tort. Defendant's Memorandum in Reply to Plaintiff's Memorandum in Opposition Dated August 8, 1991 (hereinafter "Defendant's Memorandum II") at 3. Defendant also argues that its isolated contact with the forum state is insufficient to establish minimum contacts under the due process analysis. Defendant concludes that its contacts with Maine are "so tenuous that it would offend 'traditional notions of fair play and substantial justice' for this Court to exercise personal jurisdiction over him." *Id.*

## II. *Discussion*

### A.

█ Plaintiff has failed to meet its burden. First, it has failed to show that service of process on Defendant under 28 U.S.C. section 1694 is appropriate. Plaintiff proffers no evidence that Defendant had a "regular and established place of business" in the District of Maine. The extent of its contacts with the district consisted of an initial notice-of-infringement letter to Plaintiff and subsequent correspondence with Plaintiff's attorney, outside the district, in Boston, Massachusetts.[1] Such contacts do not meet the requirements under 28 U.S.C. section 1694 and hence, the Court cannot base *in personam* jurisdiction over Defendant on this statute.

█ Plaintiff has also failed to show that *in personam* jurisdiction over Defendant falls within the scope of Rule 4. The record contains no evidence that the contacts that Defendant had with the District of Maine rose to the level of tortious conduct under Maine's long-arm statute. Me. Rev.Stat.Ann. tit. 14, § 704–A(2)(B) (1980). Further, Plaintiff has not established that *in personam* jurisdiction over Defendant would comport with due process requirements.

### B.

█ Case law does not support the applicability of a state's long-arm statute regarding tortious conduct where Defendant merely has sent a notice-of-infringement letter to Plaintiff in the forum state and subsequent correspondence to Plain-

---

1. Plaintiff concedes that notice-of-infringement letters and related correspondence were the extent of Defendant's contacts with the District of Maine. For example, Plaintiff states that "Browne directed several letters to Talus which unjustifiably threaten Talus and Talus' customers with patent infringement. The threatening letters were directed to Talus in Maine." Plaintiff's Memorandum at 3–4. Nowhere in any of its pleadings does Plaintiff identify or refer to any other contacts that Defendant had in the District of Maine.

As further evidence of the extent of Defendant's contacts with Maine, the Affidavit of Donald V. Browne states in part:

6. All activities in connection with the LITTER GITTER, including design improvements, manufacturing, sales activities, marketing activities and the like, take place from my principal and sole and only place of business located in Texas.

7. On no more than four occasions I have advertised my LITTER GITTER in a magazine of very limited and special interest that is geared towards private aircraft owners, and that has a national circulation. While the magazine claims a national circulation, I do not know if any actually are circulated in the State of Maine.

8. On the occasions that I have advertised, and for the time periods immediately prior to and for times after my advertising, I have not sold any LITTER GITTERS to any person, natural or otherwise, in the State of Maine as a result of my advertising, nor have I at any time whatsoever sold any of my products, again which I refer to as my LITTER GITTER, to any person, natural or otherwise, in the State of Maine.

9. Further, I am an individual and not a corporation, and I have never qualified to do business in Maine, have never maintained a registered agent in Maine, have never had or caused a sales representative to enter into or solicit orders from Maine, nor have I ordered or caused to be ordered any products or services from Maine in connection with my manufacture, sale and marketing of my LITTER GITTER.

10. I have no telephone listing, no business address, no residential address, no bank account, no real property nor personal property located in Maine at this time or at any time prior to the filing of this present cause of action.

11. I have no employees or agents permanently, or otherwise, assigned to work in Maine.

12. I have not paid taxes to the State of Maine for any reason whatsoever.

tiff's counsel outside the forum state. *See Velcro Group Corp. v. Billarant*, 692 F.Supp. 1443, 1447–48 (D.N.H.1988); *Kash 'N Gold, Ltd. v. Atspi, Inc.*, 690 F.Supp. 1160, 1163 (E.D.N.Y.1988); *Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft, m.b.H.*, 690 F.Supp. 798, 800–01 (D.Minn.1987); *Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.*, 676 F.Supp. 399, 402–03 (D.N.H.1987); *Chromium Industries, Inc. v. Mirror Polishing and Plating Co.*, 193 U.S.P.Q. 158, 161 (N.D.Ill.1976). We conclude that Defendant does not meet the requirement of "doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur" under Maine's long-arm statute. A notice-of-infringement letter to a party in itself does not constitute a tortious act. Further, this case is in contrast to the cases where courts have found applicable a state's long-arm statute to patent infringement actions where defendants had contact with plaintiffs' customers. No evidence exists in this record that Defendant had any contact with Plaintiff's customers—actual or prospective.

■ Defendant's contacts with Plaintiff in Maine do not constitute the requisite "minimum contacts" under the due process requirements of Maine's long-arm statute. *See* Plaintiff's Memorandum at 5–8; Defendant's Memorandum I, Exhibit "B" (Affidavit of Donald V. Browne). Defendant alleges the absence of contacts with the forum state, excepting the notice-of-infringement letter to Plaintiff. The only other contact with Plaintiff that Defendant alleges is its subsequent correspondence directed to Plaintiff's counsel in Massachusetts. Plaintiff does not assert that Defendant has had any additional contacts with Plain-

tiff. Similar to the Court's conclusion in *Sandstrom*, "the Court finds that it would violate Defendant's due process rights if the Court were to grant *in personam* jurisdiction over the Defendant under a minimum contacts analysis ..." 727 F.Supp. at 681–82.

Courts have noted that the type of contact that Defendant had with the forum state—notice-of-infringement letters—standing alone, does not meet the constitutional due process standard for personal jurisdiction. *See* Defendant's Memorandum II at 4 n. 1 (and cases cited therein). As the Court of Appeals for the First Circuit has noted: "Whether a patentee is thereafter subject to jurisdiction will depend on whether he possesses sufficient contacts with the forum to satisfy due process ... [W]e note that the mailing of an infringement notice—standing alone—has rarely been deemed sufficient to satisfy the constitutional standard." *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 196–97 (1st Cir.1980) (dicta).

### C.

Plaintiff largely relies upon cases that fail to convince this Court that the Maine statute authorizes *in personam* jurisdiction in this case. First, these cases are not controlling precedent for this Court. Second, these cases apply New Hampshire's, not Maine's, long-arm statute. Lastly, the facts of this case can be distinguished.

Plaintiff first cites the case of *Velcro Group Corp. v. Billarant*, 692 F.Supp. 1443 (D.N.H.1988).[2] In *Velcro*, however, the defendant informed both plaintiff and its *customers* of defendant's patent of a product manufactured by plaintiff. 692 F.Supp. at 1447.[3] In both *Velcro* and *Lex*

---

2. The *Velcro* court cited to its earlier case of *Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.*, 676 F.Supp. 399 (D.N.H.1987), as precedent for its decision finding *in personam* jurisdiction over the defendants. *Velcro*, 692 F.Supp. at 1447. In *Lex Computer*, the court found *in personam* jurisdiction over defendants because they had created a tort (and hence fell under New Hampshire's long-arm statute) by sending defamatory notice letters to plaintiff's customers and prospective customers. *Lex Computer*, 676 F.Supp. at 404.

3. Velcro's complaint in fact claimed that "a substantial and continuing controversy exists between VELCRO and defendants ... as to the right of defendants to threaten VELCRO and *customers* of VELCRO with infringement of the '921 patent." *Id.* at 1445 (emphasis added). Further, the complaint alleged that "Aplix, Inc. [defendant] deliberately set about to disaffect VELCRO's customers by telling them—through their agent—that VELCRO was infringing the '921 patent. The affidavit of James David Jones reveals that in early October, 1987, a

*Computer,* the court's finding of *in personam* jurisdiction arose from defendants' tortious conduct based on contact with plaintiffs' customers, both actual and prospective. In this case, however, Defendant alleges that its sole contacts with the forum state arose through an initial notice-of-infringement letter and, according to Plaintiff, also through subsequent correspondence directed to Plaintiff's counsel in Massachusetts. There is no indication in the record of any contact with Plaintiff's current or prospective customers.[4]

Plaintiff next cites the case of *Chromium Industries, Inc. v. Mirror Polishing and Plating Co.,* 193 U.S.P.Q. 158 (N.D.Ill. 1976), to support *in personam* jurisdiction over Defendant. In *Chromium Industries,* however, the court found such jurisdiction over the defendant for the same reasons as the *Velcro* court. 193 U.S.P.Q. at 161. Defendant had sent threatening letters to the plaintiff's present and prospective customers. *Id.* Plaintiff's motion for a preliminary injunction requested that the court "enjoin the defendant from threatening plaintiff's customers and prospective customers with suits for infringement of defendant's [patent]." *Id.* at 158. The *Chromium Industries* court noted that "plaintiff has introduced uncontradicted statements that at least one of its customers ... had been warned by defendant that plaintiff's [product] infringed the ... patent and the [customer]'s purchase and

use of said [product] also constituted an infringement." *Id.* Further, "plaintiff has introduced evidence to show that the [customer] was, in the early 1970's, its largest customer and over the past five years, plaintiff has lost nearly all of the business of the [customer]." *Id.* Thus, the court paid close attention to the defendant's contact with plaintiff's customers.[5]

Lastly, Plaintiff cites the case of *Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft, m.b.H.,* in which the defendant's sole contacts with the forum state were a notice-of-infringement letter to plaintiff, a settlement letter and a settlement conference. 690 F.Supp. 798, 800 (D.Minn.1987). The court found no *in personam* jurisdiction because the defendant neither fell under the state's long-arm statute (with respect to transacting business) nor had the requisite minimum contacts with the forum state. *Id.* The court noted in dicta that "the sending of letters threatening patent litigation constituted the transaction of business only if the recipient of the letter was a competitor." *Id.* Because the *Tol–O–Matic* court did not consider the defendant to be a competitor of Tol–O–Matic, it concluded that the provision of the state's long-arm statute regarding "transacting business" was inapplicable. *Id.* The court went on to conclude as well that infringement letters were insufficient to satisfy due process requirements.[6] *Id.*

---

purchasing agent of Ford Motor Co. was informed by R.A. Casolou, Inc., agent of Aplix, Inc., of VELCRO's alleged infringement." *Id.* at 1447. The *Velcro* court noted that "[i]n defendants' memorandum in support of their motion to dismiss, defendants state that they have informed 'plaintiff and other infringers' of their intentions to enforce their patent. It is alleged that 'other infringers' include customers of VELCRO." *Id.*

**4.** In addition to defendants' contacts with plaintiff's customers in *Velcro,* other facts distinguish that case. In *Velcro,* preexisting contacts were present between defendants and Velcro, independent of notice of infringement letters. Such contacts helped establish that "plaintiff ... met its burden of showing defendants knew or should have known their conduct could injure a person [there]." *Velcro,* 692 F.Supp. at 1448. One defendant "was granted exclusive manufac-

turing rights in France of fasteners designed by VELCRO GROUP. Thus, [defendant] was intimately familiar with and knowledgeable of VELCRO, USA, Inc.,...." *Id.*

**5.** The court in *Chromium Industries* stated that *in personam* jurisdiction existed "by reason of defendant's notification to the plaintiff of infringement of the [patent] and defendant's threats to proceed with 'coercive litigation' in the event that the plaintiff refused to comply with the notification." *Id.* The court's emphasis, however, upon defendant's communication with plaintiff's largest customer, appears to underlie its reasoning in finding *in personam* jurisdiction.

**6.** The court noted that "Proma's contacts with Minnesota in this case—consisting of mailing two letters to Tol–O–Matic and a settlement conference with Tol–O–Matic—are not the quantity or quality of contacts that would put Proma on

None of the cases cited by Plaintiff assists it in meeting its burden in establishing that *in personam* jurisdiction over Defendant is proper. The Court concludes that Defendant's contacts with the forum state are insufficient to meet either the service of process requirements under 28 U.S.C. § 1694 or the due process requirements under Maine's long-arm statute. The Court finds no basis for *in personam* jurisdiction over this suit.

In the absence of *in personam* jurisdiction, this Court will not consider the issue of venue also raised by Defendant in its motion to dismiss this case.

Accordingly, it is *ORDERED* that Defendant's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) or, in the Alternate, Transfer of Venue Pursuant to 28 U.S.C. section 1404, be GRANTED.

SO ORDERED.

Ivette González Buitrago, Goldman Antonetti Ferraiuoli & Axtmayer, San Juan, P.R., for plaintiff.

José Carreras Rovira, Hato Rey, P.R., for defendant.

notice that it could be subjected to suit in Minnesota. Further, Proma's contacts with Minnesota are *not acts by which Proma purposefully availed itself of the benefits and protection of Minnesota laws."* *Id.* at 801.