**OLIN MATHIESON CHEMICAL CORPORATION, Plaintiff,**

v.

**MOLINS ORGANIZATIONS, LIMITED, Defendant.**

Civ. A. No. 4556.

United States District Court
E. D. Virginia,
Richmond Division.

Dec. 6, 1966.

G. R. C. Stuart, Penn, Stuart & Miller, Abingdon, Va., W. Brown Morton, Jr., Washington, D. C., Roger T. McLean, Edward J. Mahler, New York City, for plaintiff.

E. Milton Farley, III, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., Elias Rosenzweigh, New York City, for defendants.

## MEMORANDUM OF THE COURT

BUTZNER, District Judge.

The plaintiff, Olin Mathieson Chemical Corporation, has charged The Molins Organizations, Ltd., which will be called Organization, with infringement of two United States patents, Nos. 2,953,878 granted September 27, 1960 and 3,088,-359 granted May 7, 1963. Organization moved to dismiss pursuant to Fed.R.Civ. P. 12(b) on the grounds that the court does not have jurisdiction over and that venue in this district is improper. The court concludes that venue against an alien infringer lies in any district and that process may be served in accordance with Virginia statutes. The motion to dismiss will be denied.

During the years pertinent to this action, Organization engaged in the manufacture and sale of machinery for the tobacco industry. It also held stock of subsidiary companies which in various parts of the world were engaged in manufacturing and selling machinery and parts for the tobacco industry. One of its subsidiaries was Molins Machine Co., Inc., which will be referred to as Corporation, a New York corporation organized in 1931 for the principal purpose of selling in the United States tobacco machinery manufactured by its parent. Corporation also manufactures and sells machinery parts.

The plaintiff recognizes that the English Organization and the American Corporation are separate entities. The plaintiff has filed another action in this court against Corporation for infringement of the same patents.

Corporation's offices are in New York and its only warehouse is in Richmond, Virginia. For the purposes of this motion, Corporation is recognized to be doing business in Virginia, and the parties have discussed a limited number of sales of tobacco machinery with the understanding that the facts disclosed are typical of other transactions which took place in the state.

The scope of Organization's American market and its relation to Corporation

are shown in Monopolies Comm'n Rep. on the Supply of Cigarettes and Tobacco and of Cigarette and Tobacco Machinery (London: H.M.Stat.Off.1961), ¶ 50:

> "Molins [Organization] estimates, nevertheless, that 60 per cent. of all cigarettes produced in the United States are made on Molins machines and 90 per cent. of all tobacco used there is cut on its machines. Molins goes on to say, that catering as it does for a world market of the greatest diversity, it has had to create an efficient and flexible organisation which can not only sell the machines but also provide instruction in their use and after-sales service. The company submits that it has, in fact, given 'a striking example of British ingenuity and enterprise which has secured for this country and maintained for this country a predominant position in the United States domestic market without any reliance whatever on any agreements or restrictions.' "

Nearly all of Organization's tobacco manufacturing machines are specially made. Corporation does not carry any inventory of machines. A tobacco company desiring to purchase machines negotiates the sale with officers of Corporation. The specifications and the performance warranties of the machines are approved by Organization; the actual warranty issues from Corporation. Orders are placed for the machines with Corporation. All machines are manufactured at Organization's works in England. Technical and sales conferences between representatives of tobacco companies and representatives of Organization are conducted at Organization's works in England. In accordance with Organization's instructions, test material is sent directly to England from tobacco companies in the United States. A director of Organization visits in this country annually to review the results of Corporation's operations and to find out, at first hand, developments in the tobacco industry. At less frequent intervals he visits Corporation's facilities in Richmond. At the suggestion of an officer of Corporation, he has conferred in New York City with prospective purchasers of machinery.

All seven of the service, plant and design engineers of Corporation were former employees of Organization or a related English company. These employees benefit in their present pension plans by their previous employment in England.

Corporation does not manufacture any tobacco-making machinery, but it operates a machine shop independently of its tobacco machinery business. However, the greater portion of its revenues are derived from the sale of machinery made by Organization.

Corporation takes title to the machinery in England. The machines are then shipped directly to the tobacco company which has purchased them or to Corporation for forwarding to the tobacco company.

Service engineers employed by Organization have visited the Virginia factories of tobacco companies for advice and supervision in connection with installation and modification of the machines.

Organization provides purchasers with brochures on the machines. Brochures are also sent to Corporation.

### I.

Subject matter jurisdiction of this action is conferred on this court by 28 U.S.C. § 1338(a) and is not contested.

Venue is contested. The court concludes that venue is proper under 28 U.S.C. § 1391(d), which provides:

> "An alien may be sued in any district."

■ The court holds that 28 U.S.C. § 1400(b) does not exclusively govern venue in an action for patent infringement against an alien. This section states:

> "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a

regular and established place of business."

■ The defendant, an alien, does not reside in any judicial district and the first ground for determining venue under the statute is inapplicable. The second ground may or may not apply to an alien. Infringement alone does not establish venue. In addition, the defendant must have a regular and established place of business in the district. Feder v. A. B. Fiedler & Sons, 116 F. 378, 379 (C.C.S.D.N.Y.1902). Although Corporation is a wholly owned subsidiary of Organization, Corporation's activities in Virginia do not cause Organization to have a regular and established place of business in Virginia. Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Manville Boiler Co. v. Columbia Boiler Co., 269 F.2d 600 (4th Cir. 1959), cert. denied, 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959).

■ Title 28 U.S.C. § 1400(b) exclusively determines venue for patent infringement proceedings against domestic defendants. Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942); Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); Pure Oil Co. v. Suarez, 384 U.S. 202, 206, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966) (dictum).

■ Aliens, however, can be sued for patent infringement in any district where they may be found. This was true before and after the enactment of 28 U.S.C. § 1400(b) and its predecessor, the act of March 3, 1897, c. 395, 29 Stat. 695. [Section 48 of the Judicial Code, 28 U.S.C. § 109 (1940 ed.).] In re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211 (1893); Sandusky Foundry & Mach. Co. v. De Lavaud, 251 F. 631 (N.D.Ohio 1918), rev'd in part on other grounds, 274 F. 607 (6th Cir. 1921); United Shoe Machinery Co. v. Duplessis Independent Shoe Mach. Co., 133 F. 930 (C.C.D.Mass.1904), aff'd, 155 F. 842 (1st Cir. 1907). See Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219, 225 (D.N.J.1966) (dictum); 1 Moore, Federal Practice ¶ 0.142[6] at 1510 (2d ed. 1964); 3 Walker, Patents, § 416 at 1616 (1937).

Neither Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942) nor Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) require that venue of suits against alien infringers be determined exclusively by 28 U.S.C. § 1400(b). These cases were against domestic infringers. The Court held that venue, limited by 28 U.S.C. § 1400(b), could not be enlarged by resort to general venue statutes pertaining to domestic defendants.

In Stonite, the Court pointed out that after In re Hohorst venue of patent proceedings became uncertain. The difficulty, however, was caused by allowing domestic defendants to be sued in districts appropriate for actions against aliens only. Congress remedied this situation by the act of 1897, which restricted venue to the district of which the defendant was an inhabitant, or any district in which the defendant infringed and had a regular and established place of business.

No sound policy exists for limiting venue in suits against aliens to the districts mentioned in 28 U.S.C. § 1400(b). Policy dictates that alien patent infringers may be sued in any district where they are amenable to service of process. Otherwise it might be possible that the alien could not be sued in any United States court. The first ground for establishing venue under 28 U.S.C. § 1400(b) is never available because aliens are not inhabitants of any district. 1 Moore, Federal Practice ¶ 0.142[6] at 1510. The second ground might not be available. It is quite possible that an alien infringer would not have a regular and established place of business in any district. The court believes that Congress did not intend to enact an exclusive venue statute which, while providing for one or more districts for suits against every domestic in-

fringer, does not afford a forum for suits against every alien infringer.

█ The court concludes that venue in the Eastern District of Virginia is proper under 28 U.S.C. § 1391(d), which allows an alien to be sued in any district.

## II.

Ordinarily service of process in a patent case presents no great difficulty. The defendant is either a resident of the district or has a regular and established place of business there. Process may be served on his agent. 28 U.S.C. § 1694. However, Organization is an alien and has no regular and established place of business in the United States. For that reason service of process presents a situation not ordinarily encountered in patent litigation. The plaintiff served the Secretary of the Commonwealth of Virginia as statutory agent, and Corporation as agent. The court concludes that service was proper.

█ A party not an inhabitant or not found within the state in which the district court is held may be served with a summons in federal court in the manner prescribed by a statute of the state in which the court is sitting. Fed.R.Civ. P. 4(e, f).

█ Service of process in accordance with the state statute is available although the case concerns a federal question. United States v. First Nat'l City Bank, 379 U.S. 378, 85 S.Ct. 528, 13 L. Ed.2d 365 (1965); Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219 (D.N.J.1966).

Section 8–81.3, Code of Virginia 1950 as amended, provides that when exercise of personal jurisdiction is authorized by § 8–81.2, service of process may be made on an agent or on the Secretary of the Commonwealth, who shall be deemed statutory agent.

Section 8–81.2 provides in part:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

\* \* \* \* \* \*

(b) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him .\* \* \*."

An analysis of this statute may be found in Note, "The Virginia 'Long-Arm' Statute," 51 Va.L.Rev. 719 (1965).

█ Organization is amenable to service of process pursuant to § 8–81.2. Organization transacts business in Virginia within the meaning of subsection (a) (1). It sends its technicians and employees to the state for supervision of the installation and modification of equipment purchased from it. Its principal officer visits Virginia from time to time to confer with officials of its wholly-owned subsidiary concerning the sale of machinery. All seven of Corporation's service, plant and design engineers benefit from previous employment by Organization or other subsidiaries in their present pension plans with Corporation.

Title 35 U.S.C. § 271(b) provides:

"Whoever actively induces infringement of a patent shall be liable as an infringer."

█ Organization distributed its brochures of the accused machinery to tobacco companies in Virginia. By this means it actively induced infringement.

This constitutes tortious injury by an act in Virginia covered by § 8–81.2(a) (3).

 Organization's delivery of title to the accused machinery to Corporation in England is not decisive. Organization's own acts in Virginia bring it within the purview of the statute. This conduct distinguishes the case from Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir. 1956). This activity also makes it unnecessary to consider the plaintiff's allegations that service of process can be sustained under subsection (a) (4) and that Corporation is Organization's agent.

We may not assume that the Supreme Court of Appeals of Virginia would give the statute such a narrow construction as to defeat the jurisdiction of her courts in a similar situation. Cf. Westcott-Alexander, Inc. v. Dailey, 264 F.2d 853, 860 (4th Cir. 1959). Nor does the due process clause of the United States Constitution forbid the assumption of personal jurisdiction under these circumstances. The volume of Organization's business in Virginia is not an issue in this case. The parties have stipulated for protection of Organization's trade secrets that volume would not be contested and that if jurisdiction and venue were established over one transaction, similar facts for other sales and transactions need not be proven. Organization has far more than minimal contacts in Virginia. Its employees intermittently work in Virginia. Its chief officer from time to time confers with employees of its wholly-owned subsidiary here. It distributes brochures of its machinery to Virginia companies. Corporation's employees in Virginia benefit from past employment by Organization. The maintenance of this suit does not offend traditional notions of due process and fair play. The requirements of due process are satisfied. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Moore-McCormack Lines, Inc. v. Bunge Corp., 307 F.2d 910 (4th Cir. 1962). Cf. Jackson v. National Linen Serv. Corp., 248 F.Supp. 962 (W.D.Va.1965).

The defendant's motion to dismiss will be overruled.