COULTER ELECTRONICS, INC., an Illinois Corporation, Plaintiff-Appellant,

v.

A. B. LARS LJUNGBERG & CO., Defendant-Appellee.

No. 15895.

United States Court of Appeals Seventh Circuit.

May 9, 1967.

Myron C. Cass, Chicago, Ill., Myron C. Cass, I. Irving Silverman, Silverman & Cass, Chicago, Ill., for plaintiff-appellant.

Anthony R. Chiara, Richard J. Schwarz, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for defendant-appellee.

Before DUFFY, Senior Circuit Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a suit for alleged infringement of two United States patents. The original complaint named Lars Ljungberg as the individual defendant. An attempted service on Ljungberg at the Palmer House in the City of Chicago was unsuccessful. Some time later, an amended complaint was filed including an alias summons. Lars Ljungberg was dismissed as a party defendant. The remaining defendant, A. B. Lars Ljungberg & Co. (Ljungberg) is a Swedish corporation with principal office in Stockholm, Sweden.

Particle Data Laboratories, Inc. is an Illinois corporation with place of business located in Elmhurst, Illinois. It is the sole and exclusive distributing agency in the United States for the accused Celloscope instruments. Its only place of business is within the Northern District of Illinois.

Plaintiff is an Illinois corporation with extensive manufacturing, sales and distribution facilities in the United States. It has manufactured particle analyzing

instruments and sold them throughout the United States.

Defendant corporation Ljungberg is a resident of Sweden and manufactures, in that country and elsewhere outside the United States, certain particle study apparatus known as "Celloscope" and "Celloscope 202." [1]

Plaintiff alleged that these Celloscopes are sold in the United States exclusively through Particle Data Laboratories (PDL), an Illinois corporation which it describes as an "Exclusive Distributing Agency." An attempted service of process on defendant corporation was made by serving Robert Berg, the president of Particle Data.

The defendant moved to quash service of process and to dismiss the amended complaint for lack of proper venue. The District Court granted the motion and entered an order dismissing the case "because of improper venue." The Court relied on a decision of this Court, Knapp-Monarch Co. v. Casco Products Corp., 7 Cir., 342 F.2d 622, cert. den. 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73.

There is no issue here as to the jurisdiction of the District Court over the subject matter of this suit. The complaint alleges infringement by defendant of two patents owned by plaintiff, and that such infringements occurred in the Northern District of Illinois Judicial District.

Title 28 U.S.C. § 1400(b) provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Plaintiff argues that the provisions of Section 1400(b) should be liberally construed; that defendant Ljungberg does not maintain an office or place of business in the United States which is listed in its name; that Particle Data Laboratories is the sole and exclusive distributing agency in the United States for the accused Celloscope instruments.

Plaintiff points to a history of conflict between the parties over the alleged infringements of plaintiff's patents by the defendant's Celloscope instruments. The conflict has extended into several countries and a judgment has been obtained by plaintiff in Mexico and a judgment of infringement also has been handed down in France.

Plaintiff insists the phrase "a regular and established place of business" as used in Section 1400(b) can mean the place of business of the United States based distributor where this is the regular and established manner in which the foreign corporation conducts and has conducted its traffic in the accused Celloscope instruments for many years. Plaintiff argues that the scheme or tactics of defendant of delivering the infringing instruments f. o. b. Sweden to the managing agent Particle Data should not serve as a basis or means for avoiding being called to account with respect to its infringing activities and piratical conduct.

Plaintiff further argues that the tendency of the court decisions has been to prevent corporations from interposing their foreign citizenship as a shield to venue when sufficient contacts exist with the forum in which suit has been brought.

There was a showing that Particle Data's method of operation is that sales of Celloscope instruments are made by defendant to Particle Data in Sweden where title passes. The instruments are then delivered to carriers in Stockholm which have been designated by Particle Data.

Since the completion of the sales agreement between defendant and Particle Data about July 30, 1964, Particle Data has purchased from defendant thirty to forty incomplete Celloscopes. Particle Data then completed the machines in the United States. Particle Data has the sole right to the trademark "Celloscope" in the United States. Proof was made

---

1. Celloscopes and similar instruments are used in chemical and other laboratories for counting red and white blood cells, platelets and other blood cells.

that the instruments are sold in the United States as products of Particle Data. However, one catalog sheet referring to Model 101-T reads: "Rugged, precise design created by world famous Swedish talent."

Plaintiff argues that Section 1400(b) relates solely to venue and is not a jurisdictional statute, and that it never was intended by Congress to be so construed as to prevent actions being brought against an alien corporate infringer who has no listed office or place of business in the United States.

Plaintiff refers to Fourco Glass Co. v. Transmirra Products Corp. (1957), 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786, which is a case heavily relied on by defendant. Plaintiff says "The Court in *Fourco* did not presume to consider, and, in fact, did not consider the circumstance of an alien corporate defendant which could not be a resident of a judicial district and which did not have a regular and established place of business in the district, according to the literal language of § 1400(b) * * *." Plaintiff further says that Section 1400(b) should be construed to give a patent owner means for proceeding against an alien corporate infringer in a federal district court upon whom exclusive subject matter jurisdiction for patent infringement proceedings is conferred by statute.

Plaintiff concludes its argument thusly—"Plaintiff does not ask that legislative action be taken by this Court. Rather, this Court is asked to construe Section 1400(b) in a realistic and practical manner to confer personal jurisdiction over an alien patent infringer operating in this country through a sole and exclusive distributor."

In spite of plaintiff's protests, we think it is asking us for "judicial legislation." It may well be that Congress should take appropriate action so that a foreign manufacturer may not infringe United States patents with impunity and sell the infringing device in this country by means of an exclusive sales contract which provides for a passing of title of the product in the foreign country.

Considering the strong plea by plaintiff for a liberal construction of the patent venue statute, we have in mind that this Court recently held that "patent venue provisions are not to be construed liberally." Mid-Continent Metal Products Co. v. Maxon Premix Burner Co., Inc., 7 Cir., (1966), 367 F.2d 818, 820.

The Supreme Court also has spoken on this point. In Schnell v. Peter Eckrich & Sons, Inc. (1960), 365 U.S. 260, 264, 81 S.Ct. 557, 560, 5 L.Ed.2d 546, quoting from a previous decision of that court,[2] and referring to Section 1400(b), the Court stated "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."

The Supreme Court has clearly and definitely established the rule that venue in patent infringement suits is governed exclusively by 28 U.S.C. § 1400 (b), and that Section 1400(b) is not supplemented by the general venue statutes. Stonite Products Co. v. Melvin Lloyd Co. (1942), 315 U.S. 561, 563, 62 S.Ct. 780, 86 L.Ed. 1026; Fourco Glass Co. v. Transmirra Products Corp. (1957), 353 U.S. 222, 228–229, 77 S.Ct. 787, 1 L.Ed. 2d 786.

In *Fourco*, the Supreme Court said at page 229, 77 S.Ct. at page 792: "We hold that 28 U.S.C. § 1400(b), 28 U.S.C.A. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)."

The plaintiff's position would require us to hold that Section 1400(b) can be supplemented by the provisions of 28 U. S.C. § 1391(d).[3] Some support for plaintiff's position is found in 1 Moore, Federal Practice, ¶ 0.142 [6], at p. 1510, and in the District Court case of Olin

---

2. Olberding v. Illinois Central R. Co., 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39.

3. 28 U.S.C. § 1391(d) reads—"An alien may be sued in any district."

Mathieson Chemical Corp. v. Molins Organizations, Ltd., E.D.Va. (1966), 261 F.Supp. 436, which seems to have adopted Professor Moore's views.

The view expressed in *Moore* and in the *Olin Mathieson* case that in the case of alien corporations, § 1391(d) controls venue, seems to us to be unsound. This view rests ultimately on the proposition that In re Hohorst (1893), 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211, is still sound law.

In *Stonite,* supra, the Supreme Court traced the history of patent infringement venue prior to the enactment of the provision which is now § 1400(b). The Court concluded, 315 U.S. at page 566, 62 S.Ct. at page 782, " * * * Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings."

This view was reaffirmed in the *Fourco* and *Schnell* cases, both supra. The Court in *Fourco,* 353 U.S. p. 228, 77 S.Ct. p. 791, called § 1400(b) "a special venue statute applicable, specifically, to *all* defendants in a particular type of actions, i. e., patent infringement actions." Thus, the enactment of § 1400(b) and the construction given to that section by the Supreme Court make it clear that *Hohorst* cannot be relied upon to create a special exception to the rule that § 1400(b) is the exclusive venue statute in all patent infringement actions.

Faced with two conflicting views as to the proper interpretation of Section 1400(b), it is quite understandable that we have chosen to follow the interpretation so recently announced by the Supreme Court.

Since Section 1400(b) controls venue in this case and the defendant does not have a regular and established place of business in the Northern District of Illinois, the order of the District Court dismissing the instant suit should be and is

Affirmed.