**CHAS. PFIZER & CO., Inc., Plaintiff,**

v.

**LABORATORI PRO-TER PRODOTTI THERAPEUTICI S. p. A., Raritan Chemical Corporation, and Rarisphere Corporation, Defendants.**

**No. 67 Civ. 2566.**

United States District Court
S. D. New York.

Oct. 6, 1967.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for plaintiff, Arthur G. Connolly, Sr., Thomas S. Lodge, Arthur G. Connolly, Jr., Wilmington, Del., of counsel.

Christen, Sabol, O'Brien & Caldwell, Washington, D. C., and Mitchell & Barker, New York City, for Laboratori Pro-Ter Prodotti Therapeutici S. p. A., appearing specially.

MANSFIELD, District Judge.

The defendant Pro-Ter Prodotti Therapeutici, S. p. A. ("Pro-Ter" herein) moves pursuant to Rules 12(b) (2), (3), (4) and (5), F.R.Civ.P., to dismiss the complaint against it, which alleges infringement of plaintiff's antibiotic (oxytetracycline) patents (U.S. Patents 2,516,080 and 3,017,323) within the district. Pro-Ter, an Italian corporation engaged in manufacture of drugs in Italy, challenges the sufficiency of service of process, the Court's jurisdiction over its person, and venue, for failure to meet the requirements of 28 U.S.C. § 1400(b), since it neither resides in this district nor has a regular and established place of business here.* The essential facts appear to be as follows:

Pro-Ter has had a representative in the Southern District of New York (the Raritan-Rarisphere corporations, who are named as co-defendants) for four years (Rubenstein Deposition (hereinafter "R.D."), p. 5). Mr. Rubenstein, the vice-president of both corporations, has been the officer in charge of Pro-Ter's business in the United States, having visited Pro-Ter's plant in Milan and been in charge of extensive relations with Pro-Ter and its customers in the United States. The New York representative offers Pro-Ter's products for sale subject to the approval of Pro-Ter (R.D. 6), signs applications for Food & Drug Administration certification of Pro-Ter's products, and receives certain mailings from that agency (R.D. 15–16). One shipment of oxytetracycline has been made into this country by Pro-Ter. It went to Brooklyn (R.D. 22). The representative has transmitted six or seven orders for oxytetracycline which have been accepted by Pro-Ter (but none had been shipped as of the time of the deposition (R.D. 26)), and it has placed advertisements for Pro-Ter in a trade publication (R.D. 34). *On some occasions an officer of Pro-Ter has been with the New York representative when the latter talked to prospective purchasers* (R.D. 38). Samples of Pro-Ter's products have been shipped by Pro-Ter to the New York representative (R.D. 49). An officer of the New York representative has represented to a number of drug buyers in the United States that he would sell to them on behalf of Pro-Ter (R.D. 52). When purchases were made the letter of credit ran directly to Pro-Ter (R.D. 64). The New York representative's only compensation has been a commission based upon actual sales (R. D. 65), and there has been a commission contract in effect between Pro-Ter and Rarisphere (R.D. 72). Pro-Ter does not direct or control the activities of the New York representative, which engages in other business and for other companies (R.D. 67).

---

* "§ 1400. *Patents and copyrights*
&ast; &ast; &ast; &ast; &ast;
"(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

There can be no serious doubt about the insufficiency of the foregoing activities to satisfy the requirement of the patent venue statute that the defendant either reside in the district or have a "regular and established place of business" there. 28 U.S.C. § 1400(b); see Ruddies v. Auburn Spark Plug Co., 261 F.Supp. 648 (S.D.N.Y.1966); Brevel Prods. Corp. v. H. & B. American Corp., 202 F.Supp. 824 (S.D.N.Y.1962); Mastantuono v. Jacobsen Mfg. Co., 184 F. Supp. 178 (S.D.N.Y.1960); Bradford Novelty Co. v. Manheim, 156 F.Supp. 489 (S.D.N.Y.1957); Kamkap, Inc. v. Worldsbest Indus., Inc., 140 F.Supp. 854 (S.D.N.Y.1956). See also Railex Corp. v. White Machine Co., 243 F.Supp. 381 (E.D.N.Y.1965). Although recent decisions, Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38 (S.D.N.Y.1964) and Stiegele v. Jacques Kreisler Mfg. Corp., 213 F.Supp. 494 (S.D.N.Y.1962), indicate a more flexible approach in determining the weight to be given to solicitation activities for purposes of deciding whether they amount to the maintenance of a regular and established business, the conduct here falls short of that found sufficient in those cases. Accordingly, if the plaintiff here were required to satisfy this condition of 28 U.S.C. § 1400(b), Pro-Ter's motion to dismiss would be granted.

■ There remains, however, the question of whether venue is governed exclusively by the restrictive patent venue statute, 28 U.S.C. § 1400(b), or whether, at least in the case of a suit against an alien, it may be based on 28 U.S.C. § 1391(d), the general venue statute, which provides that "An alien may be sued in any district", the term "alien" having been interpreted to include alien corporations. State of Maryland For the Use of Mitchell v. Capital Airlines, Inc., 199 F.Supp. 335 (S.D.N.Y.1961); Japan Gas Lighter Assn. v. Ronson Corp., 257 F.Supp. 219 (D.N.J.1966); Bator v. Boosey & Hawkes, Ltd., 80 F. Supp. 294 (S.D.N.Y.1948) (alien venue rule applied to foreign corporation prior to § 1391(d)'s enactment). Pro-Ter, relying mainly on the Supreme Court's decision in Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S. Ct. 787, 1 L.Ed.2d 786 (1957), and the Seventh Circuit's recent decision in Coulter Electronics Inc. v. A. B. Lars Ljungberg & Co., 376 F.2d 743 (7th Cir. 1967), contends the venue in patent infringement suits must be governed exclusively by 28 U.S.C. § 1400(b), and that it is neither supplemented by, nor dovetails with, § 1391(d).

In *Fourco* the Supreme Court, in holding that § 1400(b)'s requirements were exclusive in a suit against a *domestic* corporation, based its decision on the fact that when Congress re-enacted § 1400(b) in 1948, it expressed no intent (either in the Reviser's Notes or the text) that it should be supplemented by § 1391(c), after a prior Supreme Court decision clearly held that the requirements of § 1400(b)'s predecessor (§ 48 of the Judicial Code, 28 U.S.C. (1940 ed.) § 109) was the sole provision governing venue in a suit against a domestic corporation, and was exclusive with respect to § 1392(a)'s predecessor (§ 52 of the Judicial Code, 28 U.S.C. (1940 ed.) § 113). Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, where the Court held:

" 'that Section 48 is the exclusive provision controlling venue in patent infringement proceedings' and 'that Congress did not intend the Act of 1897 [which had become § 48 of the Judicial Code, 28 U.S.C. (1940 ed.) § 109] to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings.' " (Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. at 225, 77 S.Ct. at 789, quoting 315 U.S. at 563, 566, 62 S.Ct. at 781, 782.)

As applied to suits against domestic corporations, there were sound reasons supporting the Supreme Court rationale of Congressional intent as to the relationship between § 1400(b) and § 1391 (c). In enacting § 1400(b) Congress was proceeding on the assumption that

jurisdiction could always be acquired over a domestic infringer in *some* federal district in the United States. Hardship, inconvenience and additional expense might be visited upon a defendant, however, if it were required to respond in *any* district where it infringed rather than in the district where it resided or had a regular and established place of business. Congress therefore limited a plaintiff to suit in the latter district. The effect of holding § 1400(b) exclusive in suits against a domestic corporation, therefore, has not been to deny the plaintiff relief but merely to require that he seek relief in a prescribed district.

Neither the legislative history of § 1391(d), which deals with suits against aliens, nor the jurisdictional assumption underlying the venue requirements for suits against domestic infringers, supports a similar conclusion with respect to the relationship between § 1400(b) and § 1391(d). On the contrary, *Fourco's* rationale, which was based almost entirely on the Reviser's Notes, indicates a Congressional intent that the requirements of § 1400(b) were not to be exclusive in suits against aliens but were to be supplemented by § 1391(d). With respect to § 1391(d) the Reviser's Note reads:

"Subsection (d) of this section is added to give statutory recognition to the weight of authority concerning a rule of venue as to which there has been a sharp conflict of decisions. See (Sandusky Foundry & Machine Co. v. De Lavand, 1918, D.C.Ohio, 251 F. 631, 632 [sic], and cases cited. See also Keating v. Pennsylvania Co., 1917, D. C.Ohio, 245 F. 155 and cases cited.)"

*Sandusky Foundry*, the decision expressly accepted as authority by the Revision Note, was a patent infringement suit against an alien in which the Court held that § 48 of the Judicial Code (the predecessor of § 1400(b)) did not run contrary to the general rule allowing the institution of such a suit in any district where process might be served. The Court said:

"The defendants who have appeared are aliens. It seems to be settled law that they are not inhabitants of any district, and may be sued in any district within which process can be served on them. It was so held under what is now section 48 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1100 [Comp.St.1916, §§ 1024, 1030]) in United [Shoe Machinery] Company v. Duplessis Company (C.C.) 133 F. 930. Such is said to be the law in Walker on Patents (5th Ed.) § 389. The same holding has been repeatedly made under section 51 of the Judicial Code (Comp.St.1916, § 1033) as applied to causes of action other than suits arising under the patent laws. In re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211; Barrow Steamship Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 946; Wind River Lumber Co. v. Frankfort Marine Ins. Co., 196 F. 340, 116 C.C.A. 160; Keating v. Pennsylvania Co. (D.C.) 245 F. 155. The reasoning applies equally to both classes of cases against alien defendants." (251 F. at 632–633)

See in accord Japan Gas Lighter Assn. v. Ronson Corp., 257 F.Supp. 219 (D.N.J. 1966), where the court stated:

"The holding in Fourco was expressly based on the court's conclusion from the Reviser's Note that § 1400(b) enacted its predecessor provision, 28 U.S. C. (1940 Ed.), § 109, without substantive change. 353 U.S. at 227, 77 S.Ct. 787. As the Court noted, venue practice under § 109 with regard to corporate residence clearly was narrower than that permissible under § 1391(c). And the prevailing rule under § 109 with regard to corporate residence was carried forward under the provisions of § 1400(b). But the prevailing rule under § 109 was equally clear that alien corporations could be sued in any district. United Shoe Machinery Co. v. Deplessis Independent Shoe Machinery Co., 133 F. 930 (C.C.A.Mass. 1904). Sandusky Foundry & Machine Co. v. De Lavaud, 251 F. 631 (N.D. Ohio, 1918). Thus, if anything, the

*Fourco* case suggests that even under § 1400(b), the prior case law that aliens could be sued anywhere insofar as venue was concerned remains valid. Accord, 1 Moore Federal Practice, 1510, n. 7." (257 F.Supp. at 226, n. 6.)

■■ Furthermore the jurisdictional assumption underlying Congress' intent to make § 1400(b)'s requirements exclusive in suits against domestic corporations, does not exist in suits against aliens. Even though such an alien's conduct and contacts in various districts of the United States may be extensive, it is common knowledge that many alien businesses neither reside nor maintain regular and established places of business in *any* federal district, since they prefer to conduct their business, sometimes extensive, through agents. In an age which has witnessed consummation of the "assault on the citadel of privity", see, e. g., Noel v. United Aircraft Corp., 342 F.2d 232, 236–237 (3d Cir. 1965); Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (Ct.App.1962), and the enactment of so-called "long-arm" jurisdictional statutes (e. g., § 302 N.Y. CPLR), the constitutionality of which have been repeatedly upheld, International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the effect of holding § 1400 (b)'s requirements exclusive in a suit against an alien would be to permit a foreign infringer, who conceivably could flood this country with merchandise known by it to infringe, to escape responsibility merely because it did not maintain a regular business here. Such a construction could work grave injustice in some cases by denying victims any relief at all, even under circumstances where fundamental fairness required the alien to subject himself to the jurisdiction as a condition to his doing business here.

For the foregoing reasons this Court does not accept the Seventh Circuit's recent decision in *Coulter* as authoritative and binding, but concurs in the views expressed in Olin Mathieson Chem. Corp. v. Molins Organizations Ltd., 261 F.Supp. 436 (E.D.Va.1966), and holds therefore that venue over Pro-Ter is proper in this district.

■ Although Pro-Ter's activities in the United States would be insufficient to satisfy 28 U.S.C. § 1400(b), if its requirements were exclusive, the sum total of Pro-Ter's activities and contacts, which must be construed according to federal law, Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778 (E.D. Pa.1961); cf. Arrowsmith v. United Press Intl., 320 F.2d 219 (2d Cir. 1963), appear adequate to provide this Court with personal jurisdiction. McGee v. Intl. Life Ins. Co., supra; see Japan Gas Lighter Assn. v. Ronson Corp., supra.

■ Service of process upon Pro-Ter's New York representative, by personally serving Rubenstein, also appears sufficient. The nature and extent of Rubenstein's duties and activities (as an officer of Pro-Ter's New York representative) on behalf of Pro-Ter, described by him in his deposition of July 7, 1967, a transcript of which has been furnished to this Court, demonstrate the existence of his authority as the highest ranking person in charge of Pro-Ter's business and operations here, to accept service of process as its "managing or general agent", with reasonable assurance that Pro-Ter would receive notice of the suit. Rule 4(d) (3), F.R.Civ.P., Diapulse Corp. v. Birtcher Corp., 362 F.2d 736 (2d Cir. 1966); Nash-Ringel, Inc. v. Amana Refrigeration, Inc., 172 F.Supp. 524 (S.D. N.Y.1959); Nugey v. Paul-Lewis Laboratories, 132 F.Supp. 448 (S.D.N.Y. 1955); 2 Moore's Federal Practice ¶ 4.22[2] (2d ed. 1966), 1121–29.

Accordingly the motion to dismiss is denied.

So ordered.

### On Motion to Reconsider

The defendant Pro-Ter Prodotti Therapeutici, S.p.A. "Pro-Ter" herein) asks this Court to reconsider its decision dated

October 6, 1967, denying a motion to dismiss for lack of venue, and holding that in a suit against an alien the patent venue statute, 28 U.S.C. § 1400(b), is supplemented by 28 U.S.C. § 1391(d), which provides that "an alien may be sued in any district". In the present case venue thus properly lies in this district, despite the fact that Pro-Ter's activities and contacts would not be sufficient to lodge venue here under § 1400 (b) alone.

On the same day that this Court's decision was handed down, the Supreme Court denied certiorari in Coulter Elec. Inc. v. A. B. Lars Ljungberg & Co., 389 U.S. 859, 88 S.Ct. 103, 19 L.Ed.2d 124 (1967). In *Coulter*, the Seventh Circuit, relying principally on the Supreme Court's decisions in Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) and Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), held that a suit against an alien infringer will not permit an exception to the exclusivity of the patent venue statute, and that in such a suit § 1391(d) has no applicability. 376 F.2d 743 (7th Cir. 1967). It does not appear, however, that either the Seventh Circuit or the Supreme Court had directed to their attention, or considered, the legislative history of § 1391(d), as reflected in the Reviser's Note, which distinguishes it from § 1391(c) and shows that § 1391 (d), unlike § 1391(c), was intended to supplement § 1400(b).

 On the facts of this particular case, the denial of certiorari, which "carries with it no support of the decision [of the court below], nor of any of the views in the opinion supporting it," Agoston v. Commonwealth of Pennsylvania, 340 U.S. 844, 845, 71 S.Ct. 9, 95 L.Ed. 619 (1950) (mem. per Frankfurter, J.), would not be sufficient to justify reversing conclusions that were the result of careful consideration of the legislative and judicial history underlying the statutes involved. The motion for reargument is denied.

The moving party also seeks certification pursuant to 28 U.S.C. § 1292 (b) so that the decision may be reviewed by the Court of Appeals. One of the tests for certification is whether the appeal might "materially advance the ultimate termination of the litigation." In the present case, even if the action were to be dismissed as to the defendant Pro-Ter, the case would still proceed against the remaining defendants. Pro-Ter's reliance on Zdanok v. Glidden Co., 216 F. Supp. 476 (S.D.N.Y.1963), is misplaced for the reason that a reversal of the district court's decision in that case would have concluded the litigation without the need for further proceedings. Pro-Ter's interest in avoiding the cost of the litigation, when balanced against the policy of discouraging "piecemeal appeals" that do not advance the ultimate termination of a litigation, see Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959), is insufficient to warrant a certification under § 1292(b). Speir v. Robert C. Herd & Co., 189 F.Supp. 436 (D.Md.1960).

So ordered.