**S C M CORPORATION, a New York corporation, Plaintiff,**

v.

**BROTHER INTERNATIONAL CORPORATION, a New York corporation, Brother International Corp., a Japanese company, and Brother Industries, Ltd., a Japanese company, also known as Brother Kogyo Kabushiki Kaisha, Defendants.**

**No. 69 Civ. 4150.**

United States District Court, S. D. New York.

Aug. 12, 1970.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff; Stephen Rackow Kaye, Steven J. Stein, New York City, of counsel.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for defendants; David H. T. Kane, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Defendants Brother International Corp. (hereinafter referred to as "Brother Japan") and Brother Industries Ltd. (hereinafter referred to as "Ltd."), both alien Japanese corporations neither licensed, registered nor residing in this country, move pursuant to Fed.R.Civ.P. 12(b) (2) (3) and (5) for an order dismissing the within complaint as to them on the grounds of lack of personal jurisdiction, improper venue and insufficiency of service of process.

Since resolution of the venue issue presented herein does not depend upon the complex factual setting underlying the instant patent infringement action, the Court will defer further summarization of the relevant facts until it considers defendants' attack upon this Court's jurisdiction over their person.

Plaintiff SCM Corporation (hereinafter referred to as "SCM") urges that venue is properly laid in this district because the moving defendants are alien corporations and are therefore amenable to suit in any United States District Court. This contention is, of course, predicated upon the applicability of 28 U.S.C. § 1391(d) to suits for patent infringement. That statute provides: "An alien may be sued in any district". Plaintiff recognizes that this provision is subscribed under the heading of "Venue Generally" as opposed to being embodied in the special patent venue statute, 28 U.S.C. § 1400(b), but urges this Court to adopt the views of Judge Mansfield as expressed in his well-reasoned opinion in Chas. Pfizer & Co. v. Laboratori Pro-Ter Prodotti Therapeutici S.p.A., 278 F.Supp. 148 (S.D.N.Y. 1967), in which he ruled that in a suit for patent infringement against a defendant alien corporation, not a resident of the United States and not having a

regular and established place of business herein, venue may properly be laid in any district.

This, of course, carved an exception to the specific patent venue provision which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Defendants, in support of their motion, contend that Section 1400(b) is the exclusive venue provision applicable to suits for patent infringement. The authority they offer is formidable—two decisions by the Supreme Court, Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); Stonite Prod. Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), and one recent opinion by the Court of Appeals for the Seventh Circuit, Coulter Elec., Inc. v. A. B. Lars Ljungberg & Co., 376 F.2d 743 (7th Cir.), cert. denied, 389 U.S. 859, 88 S.Ct. 103, 19 L.Ed.2d 124 (1967).

It should be noted that although in both of the Supreme Court cases cited above Section 1400(b) was held to be the exclusive statute with regard to venue in patent infringement actions, the defendants therein were domestic corporations amenable to suit in at least one district in this country. Neither the Fourco nor the Stonite Court ever considered whether Section 1391(d) was applicable in a patent action against an alien defendant. In Coulter, supra 376 F.2d at 746, however, the Court of Appeals for the Seventh Circuit specifically rejected the argument that Section 1391(d) should be applied to patent infringement suits against alien corporations, and held that in light of the Supreme Court's rulings that venue in patent infringement actions is governed exclusively by 28 U.S.C. § 1400(b), these provisions may not be supplemented by any general venue provision including § 1391(d).

To crystallize the issue, the Court may select any one of the following alternatives: it may blindly adhere to the unequivocal language of the Supreme Court in Fourco and Stonite, supra, and rule that § 1391(d) is inapplicable; it may follow the precedent of the Seventh Circuit in Coulter, supra, which is a specific holding involving an alien corporate defendant; finally, it may hold that § 1391(d) is applicable herein by following the decision of Judge Mansfield in Pfizer, supra.

After carefully considering these alternatives as well as their underlying authority, this Court is persuaded by and has decided to adopt the well-considered opinion of Judge Mansfield in Chas. Pfizer & Co. v. Laboratori Pro-Ter Prodotti Therapeutici S.p.A., supra.

As indicated by the Court in Pfizer, the rationale supporting application of § 1400(b) exclusively in infringement suits against domestic corporate defendants is conspicuously absent in situations involving alien corporate defendants. In Fourco, supra, the Court reasoned that the special patent venue statute, § 1400(b), was the sole provision governing venue in a patent infringement action essentially because Congress re-enacted that statute without indicating any intent that it be supplemented by § 1391(c), another venue statute. It was noted that since Congress re-enacted § 1400(b) after the Court's decision in Stonite, supra, which held that § 1400(b) was exclusive with respect to § 52 of the Judicial Code (the predecessor to 28 U.S.C. § 1392(a)), without manifesting any intent that § 1392(a) should be permitted to complement § 1400(b), there was no basis for construing § 1391(c) as complementing or supplementing that section. The issues seemed legally indistinguishable to the Court which, after comparing § 1400(b) with its predecessor and carefully considering the Reviser's notes, concluded that the special patent venue statute was exclusive in its application.

Of course, neither the Fourco nor the Stonite Court ever considered whether

Congress intended to reenact a statute so exclusive in its application as to "leave the courts of the United States open to aliens against citizens, and close them to citizens against aliens." In re Hohorst, 150 U.S. 653, 660, 14 S.Ct. 221, 224, 37 L.Ed. 1211 (1893). It would affront both reason and common sense to suppose that Congress intended to close the United States District Courts to citizens seeking recovery from alien defendant infringers who cleverly insulate themselves from the territorial boundaries defined in § 1400(b). Judge Mansfield underscored this problem when he wrote "the effect of holding § 1400(b)'s requirements exclusive in a suit against an alien would be to permit a foreign infringer, who conceivably could flood this country with merchandise known by it to infringe, to escape responsibility merely because it did not maintain a regular business here." Chas. Pfizer & Co. v. Laboratori Pro-Ter Prodotti Therapeutici S.p.A., *supra*, 278 F.Supp. at 153.

In In re Hohorst, *supra*, 150 U.S. at 662, 14 S.Ct. at 225, the Court considered an issue substantially similar to the one presented herein, and concluded that a then-existing statute which placed venue in the district wherein a defendant resided was "inapplicable to an alien or a foreign corporation sued here * * * especially in a suit for the infringement of a patent right; and * * * such a person or corporation may be sued * * * in any district * * *."

It would be useful at this point to indicate this Court's disagreement with the proposition that Hohorst, *supra*, insofar as it applies to alien defendants, was overruled either by Stonite, *supra*, or the original patent venue statute.

Admittedly, Hohorst is considered and discussed in Stonite, *supra* 315 U.S. at 564, 62 S.Ct. 780. I read this discussion, however, as merely delineating the problems created in the wake of the Hohorst decision. More specifically, after the decision in Hohorst some lower courts in *patent infringement suits* did not require that the suit be commenced in the district wherein the defendant resided, but instead permitted suits to be brought against a defendant wherever he could be found. This was apparently permitted by these courts in *all* patent infringement actions, whether against a *domestic* or *foreign* defendant. This, as noted by the Court in Stonite, *supra* at 565, 62 S.Ct. 780, is what prompted the enactment of the original patent venue statute.

That Section 1391(d) is applicable to patent infringement actions is further suggested by the Reviser's notes to that section. These notes read:

"Subsection (d) of this section is added to give statutory recognition to the weight of authority concerning a rule of venue as to which there has been a sharp conflict of decisions."

Thereafter the reader is referred to Sandusky Foundry & Mach. Co. v. De Lavaud, 251 F. 631 (D.C.Ohio 1918), a patent infringement action wherein it was held that Section 48 of the Judicial Code the predecessor to Section 1400(b), did not prevent a plaintiff from maintaining a suit against an alien defendant wherever he could be found. The Court specifically ruled that since aliens are not inhabitants of any district, they may be sued in any district wherein they can effectively be served. Sandusky Foundry & Mach. Co. v. De Lavaud, *supra* at 632.

A similar conclusion was reached in Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219, 226 n. 6 (D.N.J. 1966), wherein the Court noted the great significance placed on the Reviser's notes by the *Fourco* Court and concluded "[t]hus, if anything, the *Fourco* case suggests that even under § 1400(b), the prior case law that aliens could be sued anywhere insofar as venue was concerned remains valid".

In order to avoid duplicity of discussion, reference is made to the following authorities which also suggest that in patent infringement actions an alien may be sued in any district. Olin Mathieson Chem. Corp. v. Molins Org., Ltd., 261 F.Supp. 436, 440 (E.D.Va.1966); Keller

v. Am. Sales Book Co., 16 F.Supp. 189, 190 (W.D.N.Y.1936); 1 J.Moore, Federal Practice ¶ 0.142(6) at 1510 (2d ed. 1964).

■ Having determined that venue is properly laid in this district, we turn to consider whether the Court has personal jurisdiction over movants. The facts as developed by the record before me reveal that Ltd., a Japanese Corporation organized prior to the issuance of the patent sued upon herein, manufactures and sells various products in Japan. Among these products are typewriters, the manufacture and sale of which allegedly infringe one of plaintiff's patents. The accused typewriters are sold by Ltd. to Brother Japan, the other movant herein. Neither of these corporations maintains a place of business in this country. Nor do they receive business correspondence here. It further appears that Ltd. does not sell any typewriters directly to Brother International Corporation (hereinafter referred to as "Brother N.Y."), the non-moving New York defendant corporation. Instead, it sells them in Japan, where title passes, to Brother Japan who, in turn, resells the typewriters to Brother N.Y. Ltd. exercises no control over the resales by Brother Japan. Brother N.Y. has no agreements with and does not deal directly with Ltd. In addition, the New York corporation guarantees all of the typewriters that it sells.

It further appears that the three corporations maintain separate bank accounts and separate books and records, and the non-moving defendant, Brother N.Y., is a financially responsible corporation, reporting assets in excess of $10,000,000.00 and a net worth in excess of $2,000,000.00. Brother N.Y. also prepares its own financial statements and files non-consolidated Federal, State and City tax returns.

While the above factors, collectively considered, may suggest complete independence and corporate separateness among the three corporations, close scrutiny of other relevant facts illustrate the intimate nature of the relationship among them.

First we consider that Ltd. manufactures all but one of the products sold by Brother N.Y., which is the exclusive United States distributor of Ltd.'s products. These products, including the accused typewriters, have been advertised in Good Housekeeping and Parents magazines [1] as being the result of fifty years of development by the "Brother Company". More specifically, these full-page advertisements illustrate numerous "Brother" products, including the accused typewriters, and state that "for over 50 years the Brother company has been quietly developing quality-built family products that are recognized throughout the world. * * *" [2] The Brother trademark is prominently displayed at least twice on each of these advertisements. At the bottom of the page, it is stated that Brother International Corporation, a subsidiary of Brother Ltd., maintains executive offices at 680 Fifth Avenue in New York City, and has branch offices in other cities and international offices throughout the world. It is unimaginable that these advertisements could be intended to suggest anything other than the unity and singularity of the Brother network. This conclusion is further supported by the fact that although Ltd. is the only corporation over fifty years old, the two other corporations having been organized in 1954, no attempt is made to distinguish between Ltd. as the manufacturer, Brother Japan as the exporter, and Brother N.Y. as the importer. Instead, reference is made to the "Brother Company's" fifty year development of family products. "Brother Company" must therefore encompass the entire Brother network.

That a single compartmentalized business exits is further indicated by recent listings and advertisements appearing in

---

1. Pltf. Exhs. 2, 3 and 4, attached to Affid. of John D. Dewey (dated March 26, 1970).

2. *Id.*

the Manhattan Yellow Pages,[3] wherein under the heading of "typewriters" it is printed:

"BROTHER INTERNATIONAL CORP. WORLD FAMOUS MFRS. OF FINE QUALITY HEAVY DUTY

Typewriters Svce. Coast to Coast
680 5 Ave..........Lt 1–6262"

It is further advertised that Brother typewriters are *manufactured* and distributed by *Brother N.Y.*[4] Similar statements appear in an advertisement and listing in the Chicago Yellow Pages.[5]

These advertising statements, of course, negate or at least place in grave doubt movants' contention that Ltd. is the manufacturer, Brother Japan the middleman, and Brother N.Y. this country's retail distributor. In fact, in direct contradiction to this position, Brother N.Y. is held out to the public as the manufacturer of the Brother typewriter. If this be true, then Brother N.Y. is apparently manufacturing typewriters in Japan under the name of Ltd. In any event, it seems clear that such advertising invites the conclusion that "Brother" is one entity conveniently departmentalized throughout the world.

In yet another exhibit furnished by the plaintiff,[6] it appears that the stationery used by Brother N.Y. is captioned with the New York corporate name and address, imprinted with the Brother trademark in large print, and lists at the bottom several cities throughout the world, including Tokyo and Nagoya, Japan, the corporate residences of the moving defendants herein. Here, again, is an indication that "Brother" is an international corporation with divisions and departments located throughout the world.

Other factors are also relevant in considering the issue of personal jurisdic-

tion. Two principal officers of Brother Japan reside in New York and are also officers of Brother N.Y. In addition, Ltd. owns 50 per cent of the stock in both Brother N.Y. and Brother Japan, the remaining 50 per cent of both corporations being owned by Messrs. Max Hugel, Roy Nakagawa, and Bernard J. Netzin, officers and/or directors of Brother N.Y. Both Brother N.Y. and Brother Japan have a common board of directors.

Further, it remains uncontradicted that although Montgomery Ward, a substantial purchaser of the accused electric typewriters submits orders for them to Brother N.Y., it pays Brother Japan directly for the typewriters and takes title to them while they are being warehoused by Brother N.Y. Yet another substantial customer, Remington Rand Corporation, orders the typewriters from Brother N.Y., to whom it makes payment for the same, but receives shipment directly from Brother Japan, Brother N.Y. assuming the risk of loss or damage during transit. Brother N.Y. apparently guarantees all of the typewriters and performs all services on them without being reimbursed by either Japanese corporation.

Finally, two more facts should be noted. On occasion, Ltd. at its own expense sends some of its business and technical personnel to Brother N.Y. for two to three week periods in order to assist the New York operations. Mr. Nakagawa, who receives all of his benefits and compensation from Brother N.Y., is president of Brother Japan and chairman of the board and treasurer of Brother N.Y., and occasionally makes trips to the offices of Brother Japan at the expense of the New York corporation.

Predicated upon the foregoing facts as I have found them to be, movants appear properly subject to the personal jurisdic-

3. Pltf. Exhs. 7 through 12, attached to Supplemental Affid. of Stephen Rackow Kaye (dated April 16, 1970).

4. Pltf. Exhs. 8, 9, 10 and 12, attached to Supplemental Affid. of Stephen Rackow Kaye (dated April 16, 1970).

5. Pltf. Exh. 13, attached to the Supplemental Affid. of Stephen Rackow Kaye (dated April 16, 1970).

6. Pltf. Exh. 5, attached to the Affid. of John D. Dewey (dated March 26, 1970).

**1334**

tion of this Court. The activities and relationships above described, coupled with the advertising and directory listings previously noted, undoubtedly supply sufficient contacts and activities in this jurisdiction to require movants to defend an action commenced in this forum.

In International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Court held "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, [it would be necessary that] he have certain minimum contacts with * * * [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In language that tacitly accepts the principle of "long-arm jurisdiction" the Court noted that, "'[p]resence' [in order to subject a corporation to personal jurisdiction] * * has never been doubted when the activities of the corporation * * * give rise to the liabilities sued on," *International Shoe, supra* at 317, 66 S.Ct. at 159, and some "acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. * * *" *International Shoe, supra* at 318, 66 S.Ct. at 159.

In sum, the Court held:

"[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce

them can, in most instances, hardly be said to be undue." *International Shoe, supra* at 319, 66 S.Ct. at 160.[7]

No doubt the above-described activities of movants, *e. g.,* the advertising, Brother Japan's direct shipments to and direct receipt of payments from New York, and visitation to New York of Ltd.'s personnel, justify a finding of personal jurisdiction over Ltd. and Brother Japan, especially since the underlying action arises out of and is closely connected with this conduct and activity.

More recent authority from the Court of Appeals for this Circuit, as well as the New York Court of Appeals, supports this Court's exercise of personal jurisdiction over the defendants.

In Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E. 2d 851, cert. denied, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), New York's highest court affirmed an appellate division ruling denying a defendant British corporation's motion to dismiss. The situation presented in *Frummer, supra,* was similar to the one presently before this Court. There the defendant corporation had a New York travel service corporation perform most of its New York functions. The New York corporation performed public relations services and promoted publicity for the British defendant hotel. In addition, it maintained necessary New York business contacts for it and assisted in generating business for the defendant. After considering these and other factors, the Court noted, "[i]n short—and this is the significant and pivotal factor—the Service does all the business which Hilton (U. K.) [movant] could do were it here by its own officials." Frummer v. Hilton Hotels Int'l, Inc., *supra,* 281 N.Y.S.2d at 44, 227 N.E.2d at 854.

---

**7.** Based upon the above-quoted excerpts from *International Shoe,* it is likely that jurisdiction exists over defendants under New York's "long-arm statute." New York CPLR § 302 (McKinney 1963). That a state's "long-arm" provision is applicable to a suit for patent infringe-

ment has been determined explicitly in Olin Mathieson Chem. Corp. v. Molins Org., Ltd., 261 F.Supp. 436, 441 (E.D. Va.1966) and held implicitly in Ruddies v. Auburn Spark Plug Co., 261 F.Supp. 648, 656 (S.D.N.Y.1966).

This Court has similarly found that Brother N.Y. performs public relations services and promotes publicity for the Brother network via its magazine and telephone directory advertisements. The other factors summarized above also suggest that the New York corporation's activities are channeled into generating business for both of the Japanese defendants. In short, it would not be unfair to conclude that Brother N.Y. "does all the business which * * * [the Japanese defendants] could do were * * * [they] here by * * * [their] own officials." Frummer v. Hilton Hotels Int'l, Inc., *supra*, 281 N.Y.S.2d at 44, 227 N.E.2d at 854.

Admittedly, some of the factors before the *Frummer* Court are not identical to those in the instant action. However, I find, as did Chief Judge Fuld, in *Frummer, supra,* that the inconvenience visited upon foreign corporations in defending a suit in this forum is slight compared to the benefits and advantages they receive from their activities in this State.

In Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 121 (2d Cir. 1967), cert. denied, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968), the Court of Appeals for this Circuit cited *Frummer* with approval and held that a foreign corporation will be deemed to be "doing business" here, insofar as personal jurisdiction over that corporation is concerned, when its New York representative provides those services which the foreign corporation would itself have to perform in the absence of such representative. Applying this principle to the instant suit, I conclude that the advertising and solicitation of orders for Ltd.'s typewriters, as well as the servicing, warehousing and maintenance of the same, would have to be provided for by movants in the absence of Brother N.Y. These services and activities are the lifeblood and business strength of the three corporations, without which there would

probably be no New York market for their products.

A word should be mentioned about defendants' apparent contention that § 1400(b) is a limitation on the district court's jurisdiction as well as venue. For the reasons set forth by this Court in Ruddies v. Auburn Spark Plug Co., 261 F.Supp. 648, 651 (S.D.N.Y.1966), that argument is again rejected.

■ Only a brief comment is necessary with respect to defendants' claim that service of process upon Ltd. was never properly effected. The thrust of this argument is based upon the fact that Ltd. was improperly named in the certification of service by the clerk of this court. Said certificate [8] identifies the defendant as

"Brother International Ltd.,
also known as
Brother Kogyo Kabushiki Kaisha
No. 35,9 Khome Horita-Dori
Mizuho-Ku
Nagoya Japan"

Except for the use of the word "International" instead of "Industries" everything else is correct. Since adequate notice was obviously given to Ltd., its Japanese name and address being correct, this objection predicated upon noncompliance with a purely mechanical aspect of a statute, Fed.R.Civ.P. 4, is rejected as frivolous. Lumbermens Mut. Cas. Co. v. Borden Co., 268 F.Supp. 303, 310 (S.D.N.Y.1967).

■ We turn now to movants' companion motion to strike or stay the interrogatories propounded to them by plaintiff on February 9, 1969. Since the parties have agreed among themselves on the disposition of most of the interrogatories concerning venue and jurisdiction, which, in view of this decision, are now academic, we concern ourselves only with the interrogatories probing the merits of this action. Despite movants' failure to comply with General Rule 9(e) of this

---

8. Defs. Exh. B, annexed to their Memorandum of Law submitted in support of their motion to dismiss (filed March 31, 1970).

court, I am convinced that they are entitled to a stay of the time in which they must answer or object to the interrogatories. Defendants' motion to dismiss was for the most part neither frivolous nor a "stall tactic" devised in order to avoid a trial on the merits. Indeed, they put forth persuasive, albeit unconvincing dicta from this nation's highest court and placed confident reliance on a well-reasoned opinion by the Court of Appeals for the Seventh Circuit. In the face of this authority, they have justifiably moved to be relieved of the not insignificant burden of preparing answers to interrogatories, which answers would be expensively academic if they were successful on this motion.[9]

Accordingly, and for the foregoing reasons, defendants' motions are in all respects denied except that the Court will extend the time in which movants must answer or object to the interrogatories propounded by plaintiff on February 9, 1969, until fourteen (14) days after the date of entry of this order.

So ordered.

---

9. There is, of course, ample authority for staying discovery on the merits until jurisdictional issues have been resolved. Deep South Oil Co. of Tex. v. Metropolitan Life Ins. Co., 21 F.R.D. 340, 342 (S.D.N.Y.1958); Blair Holdings Corp. v. Rubinstein, 159 F.Supp. 14, 15 (S.D.N.Y. 1954).